BUNN, District Judge
(after stating the facts as above). Upon a careful perusal of the record and testimony, we find no error in the conclusions of law or fact, and think that the decree of the circuit court should be affirmed. The defendants seem to have failed wholly in making good the allegations contained in the answer. The *453 principal questions discussed, and on which the case .turned in the court below, seemed to be: Whether there was any fraud or collusion practiced in the organization of the company and the issuing of the stock; whether stock was issued without consideration, and has not been paid for; whether there had been a fraudulent overvaluation of the property and different mill plants conveyed to the defendant company under the options taken by Stein, and, if so, whether those defendant^, who are the appellants here, being simply stockholders in, and not creditors of, the company, were in a position to urge such matters in defense to defeat the foreclosure of the mortgage or deed of trust given by the company to the trustees to secure the $1,000,000 of bonds, on sale of which the money was raised to put the new enterprise upon its feet. The main question is whether there is any liability on the part of the stockholders in defendant company which can be enforced in this proceeding or set up as a reason for defeating the foreclosure. We are of opinion that these contentions made by the defendants were properly overruled. The prime difficulty was in the lack of evidence to support the allegations of the answer. There was no evidence of any fraudulent overvaluation or of issuing stock without consideration. The consolidation of the plants and the organization of a new company was an experiment entered into for the supposed benefit of the various owners.
Assuming that the stock of the new company was of par value, and that the plants were worth only the prices fixed upon them in the several options, of course there would appear to be an overvaluation in the sale. But this is an assumption that would scarcely be warranted. Probably there was not much market value for the stock, especially the common and unpreferred stock. It was supposed that the new enterprise would make the plants more valuable, so that the value of any plant before the transfer would not be evidence of its value after the consolidation should be completed. Every one interested proceeded with his eyes open, and it was entirely competent to make such a contract as they might agree upon. There was no compulsion practiced and no evidence of fraud. The mill owners could set such valuation upon their plants as they chose, or as they could agree upon with those taking the options. The holders of options and the new company, in the absence of fraud, could do the same thing and make such bargain for the transfer as they saw fit. These owners wanted money. They wanted more capital. They wanted to lessen the expenses of conducting the business. The scheme by which this money was to be raised was to issue bonds upon a first mortgage security, and induce capitalists to buy them. The money was parted with on the faith of these bonds, which were negotiable, though even this is disputed by the counsel for appellants. The answer, however, to this contention is that an inspection of the bonds themselves shows them to be negotiable. But whether they were or not does not affect the right of complainants to a foreclosure. The company issued these bonds with full knowledge of what it was doing, and upon full consideration of the benefits to be derived to it and to the stockholders by such a proceeding. They were paid for at the face value. The company has had the money. Is there any good *454 reason why it should not pay? Are minority stockholders, who knew all about the proceeding, in any position to exclaim against the payment or against the proceeding to foreclose? It is a mere question whether the discontent of a few stockholders can defeat the foreclosure of a mortgage legally and properly given by the company, by the consent and understanding of all concerned, to induce capitalists to advance the money to set the enterprise of consolidation upon its feet and enable it to do business. Possibly Stein received more for the part he performed in obtaining options and promoting the new scheme than he was entitled to. Whether he received more than an adequate compensation for his labor and expenses would be a matter of opinion. However that may be, it is difficult to see how the rights of the bondholders to foreclose the trust deed can be affected by such a consideration. He received what the parties had agreed he should receive. There was no fraud and no collusion, as is alleged in the answer. All parties representing the different interests went into the enterprise with their eyes open. They all wanted the $1,000,000 to set up the new concern, and there seems no very good reason why the company should not pay, or why the foreclosure should not obtain. There was no concealment or misrepresentation. The terms of the options, the value of the different properties, the conditions of payment, and all other material facts were open and accessible to the company and to each stockholder. As was said by the circuit judge in his opinion: “The Columbia Straw-Paper Company parted with its capital stock for what was agreed to be the value of that stock. The property which Stein contracted to give, and which he did give, or cause to be given, to the Columbia Straw-Paper Company, was what that company agreed to accept for its stock. In that transaction the Columbia Straw-Paper Company was in no way wronged. It can have no action to recover on the theory that the stock has not been paid for, nor can any discontented stockholder assert such right for the Columbia Straw-Paper Company as against any other stockholder.” 75 Fed. 936. The suit is not prosecuted on behalf of creditors, and there is therefore no question here of the liability of stockholders. Hot only was there no evidence introduced to impeach the valuation of the properties transferred to the company, but evidence was introduced by the appellees showing the fairness and justice of the valuation, and the finding of the master and the court upon these questions is fully sustained by the evidence. Even if there had been an overvaluation, that would not affect the result. Ho doubt, in an action by a creditor against a stockholder, a gross and obvious overvaluation of property conveyed to a corporation in consideration of an issue of stock would be strong evidence of fraud, as was held in Coit v. Amalgamating Co., 119 U. S. 343, 7 Sup. Ct. 231. But this is not an action by a creditor against a stockholder, nor is there an evidence of a gross and obvious overvaluation or any overvaluation at all.
Another contention made and decided in the court below was that the bonds should have been produced before the master. It was alleged in the original bill that “all of the 1,000 bonds, of $1,000 each, with the coupons attached, were duly issued, negotiated, and sold, *455 and are now outstanding and valid obligations of the defendant Columbia Straw-Paper Company, and the same, with the coupons annexed thereto, have come into the possession of, and are now held by, a large number of persons who have become the owners thereof”; and this was admitted by the defendant company in their answer. The testimony for complainants shows that the bonds described in the mortgage were certified and issued by the defendant company; that the company had not paid any of them; that the interest coupons due January 1, 1895, have not been paid. The master found that all the issue of said 1,000 bonds was negotiated and sold, and is now outstanding, and is a valid obligation of the defendant company, and that they were due and unpaid. The court also so found and ordered a sale unless payment was made within a specified time. The trustees were not the owners of the bonds, or any part of them, but they were mortgagees in possession, and had power, under the trust deed, to enforce the lien by foreclosure and sale. In these cases, where bonds issued by railroads or other large corporations on a large scale, and held in trust by trustees, but really owned by persons in many parts of the civilized world, it has not been the practice, nor would it be practicable, to require the bonds to be produced before the court or master before a decree nisi is entered. The practice has uniformly been to enter a decree of sale without the production of the bonds. Of course they cannot be paid or share in the proceeds of sale until brought into court for payment and cancellation. In many cases years elapse after a decree is entered before all the bonds are brought in, the money lying in the registry of the court awaiting their presentation for payment, and in some cases all the bonds are never produced or paid. If the rule required all the bonds to be produced before the court or master before a decree for sale could be made, it would in many cases be a practical denial of justice. No such practice has ever obtained to our knowledge. The sale is made for the benefit of all properly concerned. The decree is not final as to the persons or debts entitled to share in the proceeds. When the time for distribution arrives, any creditor may challenge the title of the claimant of any bond presented. The course of proceeding in such cases is prouerly indicated in Toler v. Railway Co., 67 Fed. 168; Guaranty Trust & Safe-Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 150, 11 Sup. Ct. 512.
Another contention of the appellants is that there is no evidence of a demand for the payment of interest. But no demand was necessary. It is apparent that the interest was due, and had not been paid, and, under the conditions prescribed in the trust deed, the trustees declared the principal and interest owing to be immediately due. The condition broken was that, if a distress, attachment, garnishment, or execution be respectively levied or sued out against the chattels or property of such company, and such company shall not forthwith remove or discharge or pay the same, the trustees shall have power to declare the principal and interest due. Upon this breach of condition the trustees had declared the principal and interest owing upon the bonds to be immediately payable. Uo other demand was necessary. The complainants’ testimony also shows *456 that the interest coupons falling due June 1, 1894, December 1, 1894, and June 1, 1895, had not been paid, and the answer of the defendant company admitted that they had not been paid. It is also said there is no evidence that one-third of the bondholders requested in writing the trustees to declare the principal and interest due and payable, but there seems to be no lack of evidence in the record to support the finding in this respect.
It is also contended by appellants that the taking of the Flanagan judgment, and the issuing of execution thereon, was not sufficient ground on which to declare the principal and interest of the bonds due, because the judgment was obtained by collusion, and was not a sufficient ground under the provisions of the trust deed. We can see but little force in this objection. The defendant had defaulted in the payment of its interest due on the bonds. Flanagan was one of the bondholders residing in New York. He sent six coupons owned by him for collection, which, not being paid, were put into judgment by one Leffingwell acting for him. Execution was issued upon the judgment, which not being paid, the trustees declared the bonds due and payable. The company was insolvent and unable to pay, and made no resistance to the obtaining of the judgment and issuing of execution. But there is no evidence of collusion in the record. Nothing was done either by Flanagan or the company which they had not a right to do. The failure to discharge the judgment and execution was clearly a breach of the conditions of the trust deed which authorized the trustees to declare the entire debt due, and proceed to foreclosure. If the company could have kept up its interest, all this would have been avoided. But being insolvent, and wholly unable to pay its accruing interest, these objections seem somewhat of a technical character, in the light of these facts.
There are some other minor objections made to the decree which are contained in the brief of counsel, but which were not urged upon the oral argument. We have carefully considered them all, and think they should be overruled. There is but one more contention that we care to notice specifically, and that is this: That it was an error, for which the decree should be reversed, for the court to strike the appellants’ cross bill from the files. But the answer to this objection is that the appellants were n-ot made defendants, and only came in and were allowed to intervene by permission and order of the court. The cross bill was not an original proceeding on their part. Stockholders are not necessary parties in a bill against the corporation to foreclose a trust deed. They are only allowed to come in under leave of the court, where fraud on the part of the bondholders, trustees, or other parties has occurred which would affect the right of the trustees to foreclose. Thomas v. Railroad Co., 109 U. S. 526, 3 Sup. Ct. 315. Appellants were not creditors, and constituted but a very small part of the stockholders. The court, upon petition, permitted them to become defendants, and put in an answer and cross bill, upon the supposition that their answer might show a state of facts which would defeat or qualify the right of foreclosure. The substance of the answer was, as before stated, that the bondholders had acquired their stock without paying for it, and were indebted *457 to the company for it, and that there was a fraudulent overvaluation of the property. The answer was filed on May 18,1895, and the cross bill on the same day. The matters set up in the cross bill were the same, being substantially identical in averment and phraseology with those set up in the answer, and were clearly matters of defense. There was therefore no need of a cross bill, and to file such a one was an abuse of the leave given by the court. For these reasons the court was amply justified in withdrawing its permission and striking the cross bill from the files. This practice is recognized and fully sustained in Forbes v. Railroad Co., 2 Woods, 323, Fed. Cas. No. 4,926. There was a motion to set aside an order allowing parties to intervene as defendants and to. file an answer and cross bill. The interveners having, as the court thought, presented a prima facie case, orders were made in accordance with their request. The complainant moved to vacate the order, and the question was raised whether the applicants should have been allowed to intervene. The court says.
“It is questionable whether, in any ease where suit is properly instituted against a corporation, a stockholder of that corporation can, even on a suggestion of fraud on the part of its officers, come in by way of intervention as a party to that suit and seek to defeat or control the proceedings. An original bill rather seems to be the proper mode of proceeding. And it is in the discretion of the court whether or not to permit the stockholder to become a party defendant in any case where he is not made such by the bill, and, as it is held to be an extreme remedy to be admitted by the court with hesitation and caution, I think I ought not to have allowed it in this ease, and ought now to withdraw the order for such allowance. The orders for leave to intervene and file answers and cross bills will be vacated.”
The case of Betts v. Lewis, 19 How. 72, relied upon by appellants, is not in point. That was an original bill filed in the district court for the Northern district of Alabama, having the powers of a circuit court, to charge a legacy on property alleged to- have come to the hands of the respondents, and to be chargeable with its payment. After answer had been filed, and while exceptions to one of the answers were pending, the respondents moved to dismiss the bill for want of equity, and the court ordered it to be dismissed. This was making a motion to dismiss an original bill for want of equity to take the place of a demurrer, which if allowed the court might, and ordinarily would, grant an amendment to cure the defect, if it were curable. It was an original bill, which the complainants had a right to bring without any leave granted by the court. But the rule, as we have seen, is different in regard to cross bills which are filed under permission. That permission presupposes that the matter of the cross bill will be germane to the original bill, and such as could not be set up by answer. And if when the cross bill is filed it appears to violate all these rules, and to be an abuse of the leave granted by the court, the court will withdraw the permission and dismiss the cross bill, instead of putting the complainant to his demurrer. This practice seems to be entirely rational and just, and such as a court of equity will approve. The cross bill was not germane to the original bill, which was simply to foreclose a mortgage. It alleged a fraudulent overvaluation of property by the company and by directors and *458 stockholders; that the contract under which the bonds were issued was fraudulent and void; and that the bonds and mortgage were void, —all of which was matter of defense, and had been set up in the answer. It also alleged a liability on the part of the bondholders, or some of them, as stockholders, which if it existed at all could only he enforced at the instance of creditors, in a suit to which all stockholders were parties. This was not germane to a bill to foreclose .a mortgage. If two answers setting up the same matter had been put in, no one would question that one of them should be struck out, and the labeling of one as a cross bill does not change the rule. A cross bill, being an auxiliary bill merely, must be a bill touching matters in question in the original bill. If its purpose is different from that of the original bill it is not a cross bill, even though the matters presented in it have a connection with the same general subject (Crosse v. De Valle, 1 Wall. 1); and a cross bill setting up no defense except what could be set up by answer will be dismissed (Investment Corp. v. Marquam, 62 Fed. 960). We are satisfied that the record discloses no error, and that the conclusions of fact and law found by the court below are fully sustained by the evidence. The decree of the circuit court is affirmed.