## Willock, Appellant, *v.* Dilworth.

*Corporations—Stock subscription—Fraud—Concealment.*

One who subscribes to the stock of a proposed corporation at the solicitation of one of the other subscribers, cannot allege as a basis for damages in an action for deceit, that although he was informed that a certain portion of the capital stock was to be issued for patents to the patentee of the patents, it was concealed from him that the patentee agreed to assign to the other subscribers a certain portion of the stock issued to him; and this is especially so where the plaintiff offers no evidence to show that the secret agreement was made prior to his subscription.

Argued Oct. 27, 1902. Appeal, No. 26, Oct. T., 1902, by plaintiff, from order of C. P. No. 1, Allegheny Co., June T., 1900, No. 482, refusing to take off nonsuit in case of S. M. Willock v. Lawrence Dilworth et al. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass for deceit. Before STOWE, P. J.

The opinion of the Supreme Court states the case.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*Curtis M. Willock* and *J. S. Ferguson,* with them *E. G. Ferguson,* for appellant.—The defendants induced the plaintiff to

subscribe for his stock by means of the false and fraudulent representation of material facts: Clarke v. Dickson, 6 C. B. (N. S.) 453; Directors of Cent. Ry. Co. of Venezuela v. Kisch, L. R. 2 E. & I. Appeals, 99.

The directors and promoters of a corporation must deal fairly with the company and with the prospective purchasers of stock : High v. Berret, 148 Pa. 261; Holdom v. Ayer, 110 Ill. 448; Morgan v. Skiddy, 62 N. Y. 319; Paddock v. Fletcher, 42 Vt. 389; Rice's Appeal, 79 Pa. 168.

The promoters will be compelled to turn over to the company any advantage which they may gain during the period when they are purporting to act for the proposed corporation: Simons v. Vulcan Oil & Mining Co., 61 Pa. 202.

If one is induced to subscribe for stock by the fraudulent misrepresentation of a material fact or facts, and is damaged by such course of action, he may recover his loss from those making the misrepresentations: Lare v. Westmoreland Specialty Co., 155 Pa. 33; Paddock v. Fletcher, 42 Vt. 389; Gerhard v. Bates, 2 El. & B. 476; Short v. Stevenson, 63 Pa. 95.

*W. B. Rodgers*, for appellees.

Opinion by Mr. Justice Brown, January 5, 1903:

This is an action for deceit, and the facts can be very briefly stated.    Willock, the plaintiff below, alleges that he subscribed, at the solicitation of Ache, one of the defendants, for ten shares of the capital stock of a proposed corporation, to be known as The American Food and Oil Company.    Nothing appears to have been said to him upon the subject by any of the other defendants.    Ache represented to him that the capital stock of the company would be $60,000, of which a patentee, named Weatherly, was to get $29,000 for his patents, to be used by the company as the basis of its business.    It was subsequently organized with a capital of $60,000, composed of 600 shares of the par value of $100 each, of which, it seems to be conceded, 290 were issued to Weatherly.    The complaint of the appellant is that a fraud was perpetrated upon him by the defendants, for which they must answer to him for his loss on the ten shares of stock he originally subscribed for and for a loss on eighty more subsequently purchased by him from Weatherly, the alleged

fraud being an agreement entered into on June 16, 1896, between the six defendants and Weatherly, by the terms of which the latter agreed to transfer to each of them thirty-five shares of the stock issued to him, the consideration being $1.00 and the use of their names as incorporators and the subscription by each of them for five shares of the capital stock. Appellant's allegation is that, at the time he subscribed for his stock, the representation was made to him by Ache that the company was to pay Weatherly $29,000 in its stock for his patents, but that no mention was made of the agreement by which 210 shares of the stock were to be transferred by Weatherly to the appellees. The deception of which he complains is not of an actual misrepresentation by Ache, but a concealment of the agreement and a failure to disclose what he regards as its fraudulent terms. In this respect the case materially differs from Clarke v. Dickson, 6 C. B. (N. S.) 453, upon which the appellant seems to chiefly rely. There the charge against the defendant was that he wilfully made, or had been a party to the making by others, of false and fraudulent representations, and not that he merely concealed something which it was convenient that the plaintiff should know.

If the agreement of Weatherly to so transfer 210 shares of the stock to the six defendants even was of the fraudulent character attributed to it by the appellant, his first difficulty is that he did not prove it had been entered into before he subscribed for his stock. He avers in his statement, and his learned counsel argue, that it had been, but he failed to prove this material fact in his case. The gravamen of his charge against the defendant is fraud. There was no presumption in favor of it or of any fact essential to sustain it, and the burden was upon the plaintiff to prove that the compact of which he complains was made before he subscribed for his stock. If made afterwards, it cannot be pretended that it was a fraud upon him or anyone else. It was proper and lawful that, for the patents, regarded by the company as valuable, the owner of them should receive paid-up stock, for they were property within the letter and spirit of section 7, article 16 of the constitution, and, when so issued to him, he could do as he pleased with it.

The agreement was executed on June 16, 1896. The plaintiff did not prove when he subscribed for his stock. All that

he said was that he thought it was in June, 1896, and added that, possibly, the paper could be produced showing the date; but he produced no paper bearing his subscription, though the presumption is he could have done so. A fair inference from the testimony is that he subscribed before June 16, 1896. His testimony as to the time he talked to Ache is that it was in the latter months of 1895 or in the early months of 1896. He says that Ache told him Weatherly "wanted or demanded $29,000 of the paid-up capital on organization." He says, "I hesitated at that point in regard to taking the stock, saying to Mr. Ache pointedly that it was getting very close to the danger line to give a practical man $29,000 worth of paid-up stock of a concern that was capitalized at only $60,000." Ache replied: "Well, we regard it as a good venture, and Mr. Weatherly will not organize on any other terms, and if we don't accept his offer others will." Appellant then subscribed for the stock. From the history of the case in his paper-book, presumed to have been prepared by counsel in the light of the testimony as they understood it, it seems that the negotiations between him and Ache took place and that the stock was subscribed for in March or April, 1896. But whatever the inference may be as to the date of the subscription, we are concerned only with what was actually proved in the case, or rather the absence of proof that the compact or agreement between Weatherly and the appellees, of which the appellant complains, existed at the time he subscribed for his stock. Without proof that it did then exist there is nothing of which he can complain; for subsequently Weatherly, with stock properly issued to him, could do what he pleased with it without subjecting to the charge of fraud either himself or the persons to whom he may have given it, or to whom he may have sold it for what he may have regarded as a valuable consideration.

But without regard to the date of the subscription of the appellant for the ten shares of stock, was the agreement of June 16, 1896, unlawful, and can it be regarded as the means of perpetrating any fraud upon the appellant? As already stated, it was proper and lawful for the company to agree to transfer 290 shares of the capital stock to Weatherly. After he received it—on the very day he received it—he could do as he pleased with it. He saw fit, in the exercise of his best judgment, to

transfer 210 shares to the defendants, in consideration of their identifying themselves with the company organized for the very purpose of putting into practical use the patents and processes owned and controlled by him. He doubtless felt that, without such identification and the active co-operation of the defendants, no matter how much stock might be issued to him, there would be no value or profit in it for him. He may have regarded, and apparently did so regard, such identification and co-operation as imparting a value to the eighty shares he retained equal to the 210 shares given in exchange for them. At any rate, it was for him, and him alone, to put whatever value he chose upon the whole or any portion of the stock so lawfully issued to him, and, in doing so, no one was or could have been injured. The plaintiff admits he knew the stock was to be so issued to Weatherly, and, for the remaining $31,000, it is to be assumed he knew treasury stock would be issued for cash or the equivalent. It is not pretended that any misrepresentation was made as to the actual cash to be invested in the enterprise, or that anything improper was done with what the appellant knew was to be the cash capital upon which alone the company would have to depend for its operations; and it does not lie in his mouth to complain of the disposition Weatherly saw fit to make of the stock issued to him.

As to the eighty shares purchased by the appellant from Weatherly, nothing more need be said than that it was an ordinary, everyday business transaction, on which, according to his own admission, he hoped to profit, but was disappointed. The judgment of nonsuit could not have been properly withheld and ought not to have been taken off.

Judgment affirmed.