# Finletter, Appellant, *v.* Acetylene Light, Heat and Power Company.

*Corporations—Stock—Stock issued for patent rights—Bonus of stock.*

Where the stock of a corporation has been issued for patent rights, the recipients may give such stock as a bonus to subscribers for other stock of the corporation, and the subscribers who take such stock as paid up stock, are not liable for assessments.

Where stock of a corporation has been issued for patent rights, the value of the patent rights is to be determined as of the time of the formation of the company, and not after the company has become insolvent from any particular cause.

*Corporations—Stock—Assessments—Transfer of stock.*

Where the original subscribers to the stock of a corporation have parted with their stock, with all installments paid at the time of the transfers, and the transferees of the stock have been accepted by the company as shareholders, the original subscribers cannot be held for assessments.

Argued Jan. 10, 1906.    Appeal, No. 147, Jan. T., 1905, by plaintiff, from decree of C. P. No. 1, Phila. Co., Sept. T., 1897, No. 733, dismissing bill in equity as to certain defendants in case of Robert W. Finletter, receiver of the Acetylene Light,

Heat and Power Company *v.* The Acetylene Light, Heat and Power Company et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity to enforce alleged liability on stock assessments. Before BEITLER, J.

The opinion of the Supreme Court states the case.

*Error assigned* was decree dismissing the bill as to the appellees.

*Preston K. Erdman* and *Edwin O. Michener*, for appellant.— Where stock is issued for property as full paid stock, and there is actual fraud in the transaction, it will be deemed as stock subject to assessment at the suit of creditors: Camden v. Stuart, 144 U. S. 104 (12 Sup. Ct. Repr. 585); Lloyd v. Preston, 146 U. S. 630 (13 Sup. Ct. Repr. 131); Richardson v. Green, 133 U. S. 30 (10 Sup. Ct. Repr. 280); Coit v. North Carolina Gold Amalgamating Co., 119 U. S. 343 (7 Sup. Ct. Repr. 231); Taylor v. Walker, 17 Am. & Eng. Corp. Cases (N. S.), 321.

The following cases are submitted as authority that the subscriber for stock subject to call is not relieved from his liability to creditors by a transfer of his shares, even if the transfer is approved by the company: Messersmith v. Bank, 96 Pa. 440; Lane's Appeal, 105 Pa. 49; Upton v. Tribilcock, 91 U. S. 45.

*Frank P. Prichard* and *H. B. Gill*, with them *Andrew Wright Crawford, Andrew Zane, Frederick R. Reeves*, and *James Fitzpatrick* for appellee, cited: Willock v. Dilworth, 204 Pa. 492; American Tube & Iron Co. v. Hays, 165 Pa. 489; Warren-Ehret Co. v. Franklinville Ice Mfg. Co., 198 Pa. 412.

OPINION BY MR. JUSTICE BROWN, May 7, 1906:

The Acetylene Light, Heat and Power Company was incorporated for the purpose of producing acetylene gas and supplying it to consumers   Julius J. Suckert and Edward M. Dickerson held letters patent for their method of producing this gas at a price very much less per cubic foot than the cost

of producing coal gas. Joseph A. Vincent secured from them an option to purchase a license under their patent for certain territory embracing Philadelphia and its suburbs. He paid $10,000 for this option and agreed to pay $90,000 additional for the license within a fixed time and to give a certain proportion of the stock of a company to be organized for the purpose of producing the gas, to which company he was to assign the license. He induced Charles C. Adams and Edward C. Napheys, two of the appellees, and others to organize the company of which the appellant is the receiver. Its capital stock was $1,000,000, consisting of 20,000 shares of the par value of $50.00 each. The original subscribers to the capital stock took 2,000 shares and paid for them fully in cash, their subscriptions amounting to $100,000, or ten per centum of the authorized capital. In the application for the charter it was stated that, of the remaining 18,000 shares, 13,000, of the par value of $650,000, were to be issued to Joseph A Vincent in part payment for the assignment by him to the company of the exclusive license issued to him by Suckert and Dickerson. Subsequently the capital stock of the company was increased to $2,000,000, and in the application for the increase, filed with the secretary of the commonwealth, it appeared that three-fourths of the additional 20,000 shares were to be given in payment of a license for additional territory. Of the original 13,000 shares issued to Vincent, he gave Dickerson and Suckert 5,000, and of the 15,000 issued to him under the increased capital he gave them 5,000 more. Of the 40,000 shares which the company was authorized to issue, Suckert and Dickerson, the patentees, received 10,000, Vincent 18,000 and the company had 12,000 shares in its treasury, 2,000 of which were issued to the original subscribers. Vincent divided 10,000 shares between himself, Napheys, Adams and one Devine, having borrowed from the latter a part of the $10,000 which he paid to Dickerson and Suckert for the option to purchase the licenses, and turned over through Napheys 8,000 shares to the original subscribers under an agreement which he made with them that they should receive four additional shares as a bonus for each share of stock for which they subscribed and paid.

The company became insolvent, and, upon the appointment of the appellant as its receiver, he filed this bill, in which he

prays for a decree that the 8,000 shares of stock given by Vincent to Napheys, and transferred by the latter to the original subscribers, be decreed to be not full paid stock; that it was issued in fraud of the company and of the other stockholders and is liable in the hands of the present holders up to par for the purpose of paying the debts of the company ; that it be decreed that the 10,000 shares retained by Vincent, and by him transferred to other parties, were issued in fraud of the company and of the other stockholders, and that the same are liable in the hands of the present holders for such amount in excess of what they have paid therefor up to the par value thereof as may be necessary to pay the debts of the company. The main contention of the appellant is as to the liability to assessment of the stock which was issued to Vincent in payment of the licenses.

In asking that the appellees to whom the stock was given as a bonus be compelled to pay for it, the appellant invokes art. XVI, sec. 7, of the constitution, which declares that "no corporation shall issue stocks or bonds except for money, labor done, or money or property actually received ; and all fictitious increase of stock or indebtedness shall be void." The 17th section of the Act of April 29, 1874, P. L. 73, provides that full paid stock may be issued for patent rights to the amount of the value thereof, and the first and important question passed upon by the court below was as to the value of the licenses to use the Suckert and Dickerson patents. If these patents were valuable, or were in good faith so regarded by the company, it could have issued for the licenses, and the owner of them could have received from it, paid up stock for them, for they were property within the meaning of the constitution and the act of assembly. At the time these licenses and the patents under which they were issued were brought to the attention of those who subsequently organized the company, they apparently were very valuable, and the learned court below has found that, if the expectations of those interested in the company had been realized, the returns on the $2,000,000 of capital would probably have been enormous ; and the distinct finding is that the appellant entirely failed to substantiate his averment that the patents had no value. The patentees received $100,000 in cash for the licenses and 10,000 shares of the stock from Vincent, who had first received from the company for the

licenses $100,000 in cash and 28,000 shares of the capital stock, the value fixed in good faith by him and those who were to form the company, all of which appeared in the applications for the original charter and for the increase of the capital stock. It cannot, therefore, be said that, in this, fraud was practiced upon anybody, especially in view of a further finding by the court that there was nothing whatever in the evidence to justify it in holding that the stock issued to Vincent was issued for licenses that were overvalued at the time. But for the action of the fire insurance companies, after the explosion in New Haven, Connecticut, in refusing to insure any property or carry any insurance already in force on any property in which liquified acetylene gas was introduced, the expectations of the company might have been realized. In this proceeding the question of the value of the licenses is to be determined as of the time of the formation of the company, and not after it has become insolvent from any particular cause : American Tube & Iron Co. et al. v. Hays et al., 165 Pa. 489.

Nothing that was done by Vincent was concealed ; on the contrary, notice of what he and the subscribers to the capital stock proposed to do appeared in the application for the charter, and the stock that was lawfully issued to him, in consideration of his assignment of the licenses, became his property, to do with as he pleased. As was said in Willock v. Dilworth, 204 Pa. 492, he may very naturally have felt that the stock, or a portion of it, issued to him for licenses that were not overvalued as property, ought to go into the hands of those who were furnishing not only the actual cash capital required for the incorporation of the company, but the business skill and experience needed to make it succeed and its stock grow more valuable. Under the court's finding, Vincent lawfully received all the stock that was issued to him in the first instance as full paid and non-assessable, and neither he nor those to whom he transferred portions of it can now be compelled to pay anything thereon. The case is governed by Willock v. Dilworth, supra, and nothing more need be said on the main question involved.

Another question raised by the assignments of error, but not seriously pressed on the argument, is the liability of original subscribers to the stock on calls made on assessments levied

after the stock had been transferred to others.   The conclusion of the court was, that where original subscribers parted with their stock, with all installments paid at the time of the transfers, and the transferees of the stock had been accepted by the company as shareholders, the original subscribers could not be held for assessments.   This was unquestionably correct: Lane's Appeal, 105 Pa. 49.

All of the assignments of error are dismissed, and the decree below is affirmed at the cost of the appellant.