In re L. M. ALLEMAN HARDWARE CO.

GITT v. ZIEGLER et al.

(Circuit Court of Appeals, Third Circuit. September 28, 1910.)

No. 51.

BANKRUPTCY (§ 345*)—CORPORATIONS—DISTRIBUTION OF ESTATE—CLAIMS OF STOCKHOLDERS.

A corporation was organized to take over the business of a mercantile partnership in payment for which it assumed the debts of the firm, and also issued its capital stock to the partners. It did a large business, in the course of which it sold the merchandise so acquired, and paid the debts of the partnership. Held that, on the distribution of its estate in bankruptcy, the question of the value of the consideration paid by the partners for their stock was not in issue, and that a claim of

one of them against the estate, otherwise undisputed, could not be deferred until after the payment of other creditors on the ground that, as the event showed the corporation was insolvent from its organization, and that, therefore, such creditor gave no value for his stock and was liable therefor, the evidence being insufficient to show that the transaction was fraudulent, and neither the corporation, to whose rights only the trustee succeeded, nor the present creditors, having any standing to make such claim.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 345.*]

Appeal from the District Court of the United States for the Middle District of Pennsylvania.

In the matter of the L. M. Alleman Hardware Company, bankrupt. Appeal from an order refusing to permit H. N. Gitt, a creditor, to share in the distribution of assets. Reversed.

For opinion below, see 172 Fed. 611.

Allen C. Wiest and C. J. Delone, for appellant.
W. C. Sheely and John D. Keith, for appellees.

Before BUFFINGTON and LANNING, Circuit Judges, and BRADFORD, District Judge.

BUFFINGTON, Circuit Judge. In the distribution in bankruptcy of the assets of the L. M. Alleman Hardware Company, the court below refused to permit H. N. Gitt, a creditor in the sum of $21,094.12, to share in said distribution. He thereupon appealed to this court.

The L. M. Alleman Company, the bankrupt, was a corporation chartered by the state of Pennsylvania in March, 1903. It was extensively engaged in the hardware business from then until December 10, 1906, when it was adjudged bankrupt. It carried large stocks of goods, a statement made by the accountant in evidence showing that its assets at the date of bankruptcy aggregated some $68,000, and its property even under bankrupt liquidation realized, over administration expenses, upwards of $35,000 for distribution among its creditors. It is over the distribution of this fund that this controversy arises, and it is helpful to the proper consideration of the question here involved that we should bear the fact in mind that the present proceeding is one of distribution. It is in affirmance of the ownership by the corporation of the subject of distribution. Indeed, the present situation may be aptly described by what was said of the status in Hooven Co. v. Evans Co., 193 Pa. 31, 44 Atl. 277:

"The bill in this case was filed by a creditor of the corporation defendant, alleging the insolvency of the company, and asking the court to take charge of the property and assets of the defendant, and to appoint a receiver for that purpose. It was not a creditor's bill filed against a corporation and its stockholders for the purpose of enforcing the payment of unpaid capital stock for the benefit of all the creditors by means of an assessment to be made by the court upon the stockholders of the company defendant of an amount of unpaid capital stock sufficient to pay all the debts of the corporation. The bill has no aspect of that character. It does not ask for such a decree. Nor is it a bill against the stockholders claiming to hold them liable as partners by reason of defects in the organization of the defendant company as a corporation. On the contrary, it is a bill against the corporation in its corporate capacity, asking the court to administer

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its property and assets in such a manner as to have them applied to its debts. It necessarily implies, and proceeds upon the presumption, that the defendant is a corporation, lawfully created, having property of various kinds, engaged in the prosecution of a lawful business, with its assets of whatever kind, and with the intent and purpose to have those assets administered as the property of the corporation, and to have them converted into money, and the money resulting from the business carried on and from the property sold, to be applied to the payment of its debts, so far as that result can be accomplished."

The claim of Gitt is not controverted, but it is contended it cannot participate in this distribution because he is indebted to the bankrupt company. And such liability to the corporation is alleged to exist by reason of certain matters connected with the organization of this corporation. Now the Supreme Court in Hewit v. Berlin Machine, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, York v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, and Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, held that the rights vested in a trustee in bankruptcy are simply those the bankrupt held, with the exception in case of certain liens, not here involved, noted in Bank v. Staake, 202 U. S. 149, 26 Sup. Ct. 580, 50 L. Ed. 967.

The question, then, is, What rights had this corporation against Gitt when it became bankrupt? That liability is determined by the law of Pennsylvania. Let us first ascertain the facts. In 1903, Gitt, the appellant, and one Johns, were partners in the hardware business. They organized this corporation for the purpose of taking over that partnership business, of which they were sole owners. In order to obtain a charter under the Pennsylvania statutes, it was necessary that $5,000, being 10 per cent. of its capital stock, be paid in, which was done. Messrs. Gitt and Johns, who were both men of large means, were personally responsible as partners for the indebtedness of that firm. Its personal property, which inventoried $73,305.33, was turned over to the company, and this thereafter formed the stock in trade of the company, and on it and additions thereto the company did a large business. For example, its sales from March to December following its incorporation aggregated $108,000 and upwards. The corporation sustained losses by fire and its property at that time was such that $41,000 was realized from insurance and applied to the payment of its debts. During the 3½ years of its operation it lost some $34,000. When it was adjudged bankrupt, its trade assets, as we have seen above, not including an item of $18,799.80 for fixtures and good will, stable and warehouse $2,340.96, and accounts receivable $23,698.52, aggregated $51,364.84. The proofs do not disclose the gross amount realized therefrom, but there is now for distribution some $35,000. The partnership whose business was taken over by the company was so heavily involved at the time that we may assume that liquidation meant insolvency. As Gitt and Johns were of abundant means and were personally liable for all of that indebtedness, they chose to continue the business under corporate name, and since none of the indebtedness of the partnership, liability for which was assumed by the corporation, is now claimed against the latter, presumptively it has all been paid. At any rate, there is no evidence that any of it is now existing, and no claims made upon the present fund are shown to have been in-

debtedness of the old firm. Moreover, there is no evidence in this case that any present claimant of the company was misled, deceived, or induced to extend credit to the corporation by any statement, fact, or omission connected with or growing out of the original incorporation of that company, its taking over of the business of the preceding partnership, or of the terms of such transfer. In fact, there is nothing in this case that satisfies us of anything but the good faith of the parties in forming this corporation. They were men of means, and had originally become responsible on paper of the preceding partnership. Their experience with it and with a partner who had drawn them into it naturally led to a desire to limit their future personal responsibility, and this they sought to do by incorporation. But the course of business showed this could not be done, for, from the date of incorporation forward, Gitt continues to evidence his faith in the future of the corporation by permitting Johns to go out of the business. From time to time Gitt extended his personal credit, and increased his liability by indorsing its paper. In view of the subsequent fire, the corporation's losses and its system of bookkeeping, which, as we understand the accountant's criticism, was such as might not have given the company itself full appreciation of its operations, the bankruptcy of the company can be attributed to other causes than to the charge that the whole life of this company from its start was an insolvent bankrupt operation. Indeed, when the attention of the accountant, who examined the company's affairs at the instance of the trustee, was called to the fact that his report as of March, 1903, shows the company was insolvent, he says:

"We know it now that it was insolvent then and at the time of its incorporation. We make the statement now, but could not have made it then."

And this is the just view to take, for, as was said in Finletter v. Acetylene Light Company, 215 Pa. 90, 64 Atl. 430, when it was alleged patents were overvalued in the issuing stock therefor:

"In the proceeding the question of the value of the licenses is to be determined as of the time of the formation of the company, and not after it has become insolvent from any particular cause. American Company v. Hays, 165 Pa. 498 [30 Atl. 936]."

Now, in the present case, it is alleged the firm was insolvent when its property was taken over by the company, and the $25,000 in stock which Gitt and Johns received in payment therefor, and all of which Gitt now owns, was issued without consideration and in violation of the provisions of the Pennsylvania act of April 29, 1874 (P. L. 81), as amended by the act of April 17, 1876 (P. L. 32), which provides:

"Every corporation created under the provisions of this act or accepting its provisions, may take such real and personal estate, mineral rights, patent rights, and other property, as is necessary for the purpose of its organizations and business and issue stock in the amount of the value thereof, in payment thereof."

Now, granting that subsequent events show the partnership was then insolvent, we then have the question, How was any party now before us effected thereby, or how could that issue be involved in this distribution? This company came into existence, and its whole corpo-

rate business was based on the stock of goods it obtained from this firm. Its whole business existence and the assets here distributed are founded on the affirmance, ratification, and enjoyment of the contract for the sale or the property of Gitt and Johns to the corporation. It sold these goods and mixed the proceeds up in its operations, and the present fund had its origin in property of the old firm. How, does it lie in the mouth of the company to at the same time enjoy the property it received and allege the illegality of its reception? We are not here dealing with a fraud, we are not dealing with a subscription to stock, we are not dealing with the rights of any creditor who was misled; but we are dealing with a case where no party who might have been injured thereby is concerned, where all the creditors of the old firm have been paid, and where there is no proof that any creditor of the new corporation has been deceived or misled by the stock issue complained of. If, then, the rights of no individual creditor are here involved or sought to be enforced, it follows that Gitt's claim cannot be rejected unless the bankrupt company itself has a counterclaim against him. And how can it be said it has? It is true capital stock is a trust fund for the benefit of creditors, and, if stock is ficticiously and fraudulently issued, it may be collected for the benefit of creditors (Coit v. Gold Co. [C. C.] 14 Fed. 16; Handley v. Stutz, 139 U. S. 436, 11 Sup. Ct. 530, 35 L. Ed. 227); but when, as here, the value of the consideration of the stock was fairly debatable, and the corporation enjoyed, used, and did its entire corporate business for several years on the property conveyed to it, and where the property cannot be restored or the contract rescinded, and where no person here interested was in any way induced to act or was misled or wronged by the maintenance of that status, we think the corporation has no such right or claim against Gitt as prevents his unquestioned debt from participating in this distribution. Under these facts, it is clear that this corporation had, prior to bankruptcy, no right of action against Gitt to recover on this stock which was issued to him for his merchandise. And, if such be the case, the status of the parties is not changed by bankruptcy, for, as was said in Thompson v. Fairbanks, supra:

"Under the present bankrupt act, the trustee takes the property of the bankrupt, in case unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities imposed upon it in the hands of the bankrupt."

We are therefore of the opinion that Gitt should have been allowed to prove his claim, and the decree is reversed, with directions to allow him to do so.