## CLINTON MINING & MINERAL CO. v. JAMISON.

(Circuit Court of Appeals, Third Circuit. April 4, 1919.)

### No. 2413.

1. CORPORATIONS ⫷═232(3)—ISSUANCE OF STOCK FOR PROPERTY—FINANCING ARRANGEMENTS.

When the stock is full-paid, no exception can be taken to a transaction wherein the owners of mining claims convey their properties to a corporation formed by them in consideration of its whole capital stock, returning to the company three-quarters of the shares as treasury stock for use, in financing the undertaking, whereupon the corporation executes mortgage to secure bonds, which it sells to the incorporators and others, giving as a bonus one share of stock for every dollar subscribed.

2. CORPORATIONS ⫷═232(3)—FULL-PAID STOCK—COST OF PROPERTY TRANSFERRED.

The cost of mining claims to the buyers thereof is not a test of the value of the claims, in determining whether stock of a mining company, issued for such claims, when transferred to the company by the buyers, was full-paid; nor were the recited considerations in the conveyances to the buyers, or even in conveyances to the company, evidence of the value of the properties in its hands, on which could be based finding the properties were overvalued.

3. CORPORATIONS ⫷═232(3)—ISSUANCE OF STOCK—OVERVALUATION OF PROPERTY—BENEFIT OF DOUBT.

Where there is ground for a difference of opinion as to the value of property transferred to a corporation in return for its stock, on the issue of overvaluation the benefit of the doubt will be given the stockholders.

4. CORPORATIONS ⫷═269(3)—STOCKHOLDER'S LIABILITY—OVERVALUATION OF PROPERTY—SUFFICIENCY OF EVIDENCE.

In an action against a stockholder in a mining company to enforce his liability under Civ. Code S. D., § 441, evidence *held* insufficient to sustain finding that mining property, which defendant stockholder and others transferred to company in exchange for its stock, was overvalued, so that stock was not fully paid.

5. CORPORATIONS ⫷═269(3)—ISSUANCE OF STOCK—OVERVALUATION OF PROPERTY.

The fact that a mining corporation failed from 10 to 13 years after issuance of its stock for certain properties is not in itself evidence of any overvaluation of the properties, or lack of value in them at the time of the transaction.

6. CORPORATIONS ⫷═232(3)—ISSUANCE OF STOCK—VALUATION.

When property has in good faith been given a value in the issuance of corporate stock for it, the courts will not disturb it because events subsequently occurring show that the property was overvalued, but must determine the question of value on facts as they existed when the transaction was consummated.

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Action by the Clinton Mining & Mineral Company a corporation of the state of Iowa, against William W. Jamison, a citizen of the state of Pennsylvania. To reverse a judgment of nonsuit, plaintiff brings error. Affirmed.

A. O. Fording, of Pittsburgh, Pa., for plaintiff in error.

J. M. Hodgson, of Casper, Wyo., and E. C. Higbee, of Uniontown, Pa., for defendant in error.

⫷═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WOOLLEY, Circuit Judge, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge. Clinton Mining & Mineral Company, a corporation of Iowa, recovered judgment against Imperial Gold Mining & Milling Company, a corporation of South Dakota, in an action on a tort committed in 1910. Having failed to impose the debtor corporation's liability upon a number of its stockholders by an action in equity (Clinton Mining·& Mineral Co. v. Cochran, 247 Fed. 449, 159 C. C. A. 503), the Clinton Company, in 1917, brought this action at law against William W. Jamison, a single stockholder of the Imperial Company to recover the debt due on the said judgment, under authority of a South Dakota statute (Section 441, Civil Code of 1913), which provides:

"Each stockholder of a corporation is individually and personally liable for the *debts* of the corporation to the extent of the amount that is unpaid upon the stock held by him. Any creditor of the corporation may institute joint or several actions against any of its stockholders that have not fully paid the capital stock held by him, and in such action *the court must ascertain the amount that is unpaid upon the stock held by each stockholder* and for which he is liable, and several judgment may be rendered against each in conformity therewith. Liability of each stockholder is determined by the amount unpaid upon the stock or shares owned by him at the time such action is commenced, and such liability is not released by any subsequent transfer of stock. . *   *   * "

The plaintiff averred as a matter of fact and introduced testimony to prove, that the entire capital stock of the Imperial Company had been issued for property at an overvaluation, and maintained, as matters of law, that the defendant stockholder is liable under the cited statute for the debts of the corporation to the amount that is unpaid upon the stock held by him, and that the plaintiff's judgment against the Imperial Company is a "debt" of that corporation within the meaning of the statute. For defence, the defendant maintained that the·liability which the statute imposes upon stockholders for debts of a corporation is for contractual debts and is not for a judgment obligation founded in tort, on the theory that a stockholder is never liable for the corporation's torts; and that, in consequence, no such liability can arise against him when a corporation's tort obligation is reduced to judgment. The defendant contended further, that the property for which the stock of the Imperial Company had been issued as full paid was not in fact overvalued; or, if overvalued, it was not an excessive overvaluation; that neither fraud nor fraudulent intent was involved in its valuation; and therefore the defendant stockholder cannot in any event be reached on the ground that the stock was not full paid.

At the conclusion of ·the testimony the defendant moved for a non-suit on several grounds. This motion was granted by the court, not because of lack of proof of overvaluation of the property, but on the ground that the South Dakota statute, imposing upon stockholders liability for corporation "debts" to the extent stock is not paid for, does not embrace an obligation of a judgment rendered in tort. On motion to take off the non-suit, the court sustained its ruling on authority of

Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038; Bohn v. Brown, 33 Mich. 257; Ward v. Joslin, 105 Fed. 224, 44 C. C. A. 456.

A writ of error was taken by the plaintiff on a very brief bill of exceptions, which disclosed no testimony and consisted merely of a statement—apparently agreed upon by counsel as raising the issues—to the effect that the evidence "tended to prove the shares of capital stock held by the defendant had been issued against property at an overvaluation (though without actual fraudulent intent) and that in this sense the said stock had never been fully paid for." When the case was argued before us, the discussion was addressed mainly to the point on which the learned trial judge had granted a non-suit, though argument was made also on the law affecting the alleged overvaluation of the property, as shown by the bill of exceptions. The case as argued involved an interpretation of the law of South Dakota as to a stockholder's liability for the payment of the corporation's debts to the extent of his holding of its unpaid stock, and also an interpretation of the constitutional provision of the State of South Dakota authorizing the issue of capital stock for property. (Const. Art. 17, § 8.) As a decision by this court interpreting the statutory and constitutional provisions of South Dakota would in no sense bind the courts of that state when called upon to interpret its own statute and constitution, we hesitated in view of the lack of information contained in the abbreviated bill of exceptions to decide the case upon these points, preferring if the case in its other aspects is capable of decision under general law, to leave the interpretation of the law of South Dakota to its own courts. Therefore, of our own motion, we suggested diminution of the record, and, in compliance with the writ of certiorari that followed, the evidence in the case was brought before us for the first time.

We lay aside the interpretation of the word "debts" in the South Dakota statute as a matter which does not call for decision in this case until overvaluation of the property against which the stock was issued has first been determined, for it is on this fact alone that the defendant stockholder's liability for the corporation's debts is predicated. If no overvaluation is shown, no recovery can be had against the defendant, whatever may be the meaning of the word "debts" appearing in the statute.

The matter of overvaluation in this case has two aspects; first the law of the case, and second, the facts of the case. There being no judicial expression by the courts of South Dakota on the subject of valuation of property against which under its constitutional provision capital stock of a South Dakota corporation may be issued, and the familiar statutory provision that the judgment of directors as to the value of property for which stock is issued shall in the absence of fraud be conclusive, not being enacted in South Dakota until a later date, both parties looked elsewhere for the law and came into the court as far apart as the decisions themselves are, each having followed the line most favorable to his position. In the law of this subject, there are two rules governing the valid valuation of property against which stock of a corporation may be issued as full

paid. Of one rule, Van Cleve v. Berkey, 143 Mo. 109, 44 S. W. 743, 42 L. R. A. 592 (followed of necessity in Babbitt v. Read [D. C.] 215 Fed. 408, 236 Fed. 42, 149 C. C. A. 252 (C. C. A. 2d), interpreting the Missouri constitution, is the leading case. The rule requires that the value of the property must actually equal the amount of the stock regardless of any question of fraud, fraudulent intent, or the honest opinion of stockholders as to its worth. Under this rule, having its foundation largely if not entirely on interpretations of state laws, the only question for the jury is, Was the property worth the amount of the stock? This is known as the "true value" rule. In it, motive, intent and good faith are disregarded and the one thing to be shown is that the property conveyed for the stock was its equivalent in money and was worth in dollars the face of the shares. The other rule, of which Coit v. Gold Amalgamating Co., 119 U. S. 343, 7 Sup. Ct. 231, 30 L. Ed. 420 is cited as the leading case, is known as the "good faith" rule, in which it is recognized that value is a matter about which men may honestly differ and in which the further questions of intention, good faith and fraud are submitted to the jury. Under this rule, to be sure, no device is tolerated to avoid an honest valuation, yet a margin is allowed for honest differences of opinion, and generally the transaction will be upheld even as against subsequent creditors if the valuation was honestly made, although it appear there was an error of judgment and that the valuation was in fact incorrect. Northwestern M. L. Ins. Co. v. Cotton Exchange R. E. Co. (C. C.) 70 Fed. 155; Fletcher's Cyclopedia Corporations, 3576. Of course, the transaction is always impeachable for fraud, and gross or intentional overvaluation is itself proof of fraud. Preston. v. Cincinnati C. & V. R. Co. (C. C.) 36 Fed. 54, 1 L. R. A. 140; Lloyd v. Preston, 146 U. S. 630, 13 Sup. Ct. 131, 36 L. Ed 1111; Camden v. Stuart, 144 U. S. 104, 12 Sup. Ct. 585, 36 L. Ed. 363; Fletcher's Cyclopedia Corporations, Sec. 3576. There is little if any distinction in the cases between actual fraud and fraudulent intent in overvaluation.

If we were forced to follow either rule in order properly to decide the case before us, we might pause before subscribing to the true value rule based as it is on interpretations of state constitutions, and would perhaps incline to the good faith rule as the general rule pronounced by the Supreme Court of the United States. But we find on examining the testimony that the plaintiff was properly non-suited under either rule. We shall therefore address our discussion to what the evidence shows and fails to show under both rules, referring those who are interested in the subject to cases and text books in which they will find it elaborately discussed. Van Cleve v. Berkey, 42 L. R. A. 593, note; 5 Fletcher's Cyclopedia Corporations, Section 3576; 1 Parker, N. J. Corporations, Section 61; 1 Cook on Corporations (7th Edition) Section 46; Coit v. Gold Amalgamating Co., 119 U. S. 343, 7 Sup. Ct. 231, 30 L. Ed. 420; Babbitt v. Read (D. C.) 215 Fed. 395.

Turning to the testimony, it appears that the Imperial Gold Mining & Milling Company was incorporated in 1899 under the laws of South Dakota. Several of its incorporators owned mining claims known as "The Chicken Fraction Lode," "American Express No. 1," "American Express No. 2," "Piedrock" and "No Mistake," situate in Lawrence

County, South Dakota. On April 12, 1900, the incorporators (to whom we shall refer as the vendors) conveyed these properties to the Imperial Company in consideration of its whole capital stock of 1,000,000 shares of the par value of $1.00 a share, and $50,000 in money. Regarding the stock as full paid, they then returned to the corporation 750,000 shares as treasury stock for use in financing the undertaking. Whereupon the corporation executed a mortgage to secure $200,000 bonds, which it sold to the incorporators and others, giving as a bonus one share of treasury stock for each dollar of bonds subscribed. With the money raised from the sale of bonds and also from the sale of treasury stock at 25 to 45 cents a share, the corporation built reduction works and proceeded to the business of mining its properties.

[1] No exception can be taken to a transaction of this kind, when the stock is full paid. Finletter v. Acetylene L. H. & P. Co., 215 Pa. 86, 64 Atl. 429; 1 Cook on Corporations, Section 46.

The mining claims which were conveyed for the stock aggregated about thirty-seven acres. They were not mere prospects; they were properties which had been previously developed by mining operations, from which ore had been taken and shipped to the smelter. A number of drifts and tunnels had been run aggregating more than 1,200 feet. These followed and cross cut ore bodies and shoots exposing veins of ore about six hundred feet in length, varying from 8 to 12 feet in height and from 15 to 40 feet in width, running from a low grade of $6.00 to a shipping grade of $20.00 a ton. Although no expert had measured up the ore, it was thought at the time that the ore exposed was worth $250,000, and that the whole mine was fully worth the entire capital stock of the corporation. This valuation was based on metal values in high and low grade ore and on an estimated cost of reduction by the company's proposed cyanide works of $3.50 a ton, and was made with reference not alone to the probability of finding additional ore above the flat or sedimentary formation, but to the possibility, in view of the proximity of the property to the Homestake mine, a mile and a half away, of encountering beneath the flat formation the continuation of the vertical vein of that highly valuable property.

[2] For proof that the property for which the stock had been issued was overvalued, the plaintiff put in evidence the deeds by which the vendors had acquired the properties, showing the considerations which they had paid. One deed was for a one-third interest in the American Express Group, showing the consideration of $1.00. Several were for undivided one-fourth and one-eighth interests in the Chicken Fraction Lode, the consideration in each being $100. Another conveyed an undivided three-fourth interest in the same claim to the Imperial Company for the consideration of $500; another conveyed a one-eighth interest in the same claim for the consideration of $1.00; and still another conveyed the American Express No. 2 and other claims for the consideration of $50,000. All deeds carried cancelled revenue stamps of appropriate denominations. As most of the recited considerations were manifestly nominal they imparted no information as to the real value of the properties conveyed. Obviously, they

may have had values in nowise represented by the recited considerations. Nor is the cost of the claims to those who subsequently conveyed them to the corporation conclusive. The cost to the vendors is not a test of value. Dickerman v. Northern Trust Co., 80 Fed. 450, 25 C. C. A. 549, affirming. Northern Trust Co. v. Columbia Straw-Paper Co. (C. C.) 75 Fed. 936; Grant v. E. & W. Ry. Co., 54 Fed. 569, 4 C. C. A. 511, affirming Coe v. E. & W. R. Co. (C. C.) 52 Fed. 531; Commonwealth v. Central Passenger R. Co., 52 Pa. 506; Thomas v. Barthold (Tex. Civ. App.) 171 S. W. 1071. We are concerned with their value to the corporation and that value may exceed what it cost the vendors, who were doing little more than transferring the properties, whatever their value, from themselves as individuals to a corporation of which they were the owners and through which they expected to finance and operate the properties. Therefore, we do not regard the recited considerations in conveyances to the vendors or even in conveyances to the corporation evidence of the value of the properties in the hands of the vendee corporation on which alone we could sustain a verdict that the properties were overvalued.

[3, 4] If we were to apply to this evidence the Missouri rule, which is the true value rule, requiring a money equivalent in the property for the face of the stock, we find no evidence that the property conveyed for the stock was not the money equivalent of its face. The most that we find is a doubt, the benefit of which the courts give stockholders where there is ground for a difference of opinion as to the value of the property. Van Cleve v. Berkey, 42 L. R. A. 593, note 600; In re L. M. Alleman Hardware Co., 181 Fed. 810, 814, 104 C. C. A. 320 (C. C. A. 3d). The plaintiff cannot impose liability on the defendant based upon a doubt that his stock is but partially paid. As the fact must be established by evidence that will sustain this inference, we are satisfied that even under the true value rule, the evidence does not show that the plaintiff has proved its case. American Tube & Iron Co. v. Baden Gas Co., 165 Pa. 489, 30 Atl. 940.

Under the fair value rule, or the general rule as announced by the Supreme Court in Coit v. Gold Amalgamating Co., 119 U. S. 343, 7 Sup. Ct. 231, 30 L. Ed. 420, involving the good faith with which property is valued for the purpose of capitalization, we find no evidence indicating an absence of good faith or suggesting either fraud or fraudulent intent on which we could sustain a verdict to the contrary.

Aside from a lack of evidence in this case on which a jury could reasonably find overvaluation of the property, there is no evidence at all on which the court or the jury could fix the measure of the stockholder's liability under the South Dakota statute which provides that, "in such an action the court must ascertain the *amount* that is unpaid upon the stock held by each stockholder and for which he is liable." Had the case been submitted and had the jury found overvaluation, there is no evidence on which the jury could find how much the property was overvalued, and therefore how much remained unpaid on the stock. Not being able to calculate a deficiency on the stock, the defendant stockholder's liability was not capable of computation.

[5, 6] The only remaining testimony on the subject of overvaluation

of the property was the foreclosure in 1910 of the mortgage given in 1900 to secure $200,000 bonds and the sale of the property thereunder in 1913, indicating the failure of the undertaking many years after the issue of the stock. But this evidence will not sustain a finding of overvaluation by the jury. It shows the corporation's failure, but not the cause of it. Failure may have been due to a variety of circumstances—exhaustion of ore bodies after working out values equal to the stock issue, unforeseen changes in character of ore with consequent increase in cost of reduction, inefficient or dishonest management. But whatever the cause may have been, the event of failure transpiring from ten to thirteen years after the issue of the stock is not itself evidence of the lack of value of the property at the time of the transaction. We invoke here a general rule of evidence, which is not affected, we surmise, by interpretations which the courts of South Dakota may make with respect to the statute and the constitution of that state. It is the sound rule, that when property has in good faith been given a value, the courts will not disturb it because events subsequently occurring show that it was overvalued. N. W. Mutual Life Ins. Co. v. Cotton Exchange Real Estate Co. (C. C.) 70 Fed. 155; Carr v. LeFevre, 27 Pa. 413; Turner v. Bailey, 12 Wash. 634, 42 Pac. 115; American Tube & Iron Co. v. Baden Gas Co., 165 Pa. 489, 30 Atl. 940. The question of value must be determined upon facts as they existed when the transaction was consummated, not by subsequent events, such as the failure of the undertaking. 5 Fletcher's Cyclopedia Corporations, Section 3576, and cases; Finletter v. Acetylene L. H. & P. Co., 215 Pa. 86, 64 Atl. 429.

The evidence shows that this corporation mined its properties and milled its ore for ten or more years after the stock was issued for the property. The ultimate failure of the corporation ten or thirteen years afterward we do not regard as evidence on which to find that the property was not worth the face of the stock at the time it was taken over.

After very carefully considering the evidence in this case we are of opinion that if the case had been submitted to the jury, and if the jury had found against the defendant on overvaluation of the property, that verdict could not have been sustained. It follows, therefore, that the action of the trial court in awarding a nonsuit was right.

As we have not heard counsel upon the phase of the case on which we base our decision, except by memoranda, we indicate a willingness to hear oral argument should counsel desire it, and therefore direct that, unless a petition for a hearing be presented within sixty days from the date of the filing of this opinion, the judgment below be

Affirmed.