MILLER & LUX v. RICKEY et al.   WOOD et al. v. RICKEY LAND & CAT-
TLE CO.   MILLER & LUX v. RICKEY LAND & CATTLE CO.   GIG-
NOUX et al. v. SAME.   GALLAGHER v. SAME.   AMES et al. v. SAME.
NICHOL et al. v. SAME.   CONWAY et al. v. SAME.

(Circuit Court, D. Nevada.   June 25, 1906.)

Nos. 731, 790, 791, 793–797.

1. WATERS AND WATER COURSES—SUIT FOR DIVERSION OF WATER FROM STREAM
—DEFENSES.

In a suit by an appropriator of water from a stream to enjoin diversion of the water by others above him in violation of his prior right, in which no damages are claimed, it is no defense for one defendant, as against the claim of complainant, that others inferior in right to himself are diverting a larger quantity of the water than is claimed by complainant.

2. COURTS—EQUITY—PLEADING—MATTERS ADJUDICATED ON PLEA—AVAILABILITY
ON ANSWER.

Matters which have been adjudged on a plea not to constitute a defense cannot be again set up in the answer.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 340.]

3. EQUITY—CROSS-BILLS—PLEADING DEFENSIVE MATTER.

In a suit to enjoin diversion of water from a stream, a cross-bill filed by a defendant against the complainant, which merely alleges priority of right in such defendant and diversion by complainant, and prays affirmative relief, sets up only matter of defense, which may properly be taken by answer and is demurrable.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, § 469.]

4. SAME.

A defendant cannot by calling his pleading a cross-bill, and praying for affirmative relief, require complainant to answer the same, where the matter set up therein is purely defensive.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, § 469.]

5. COURTS—JURISDICTION OF FEDERAL COURTS—ANCILLARY PROCEEDINGS ON
CROSS-BILLS.

Cross-bills between defendants in a suit in a federal court to determine appropriators' rights in the waters of a stream, of which the court has jurisdiction by reason of the diversity of citizenship between complainant and defendants, are ancillary to the original suit, and within the jurisdiction of the court, without regard to the citizenship of the parties thereto.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 801.

Supplementary and ancillary proceedings and relief in federal courts, see note to Toledo, St. T. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.]

6. SAME—FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION.

Where a federal court has first acquired jurisdiction of a suit to determine the respective rights of appropriators of water from a stream, it is its right and duty to protect such jurisdiction against interference, and it will enjoin a defendant from prosecuting a later suit brought by him against the complainant in a state court relating to the same subject-matter.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 1345, 1418-1430.]

7. SAME—PROTECTION OF PRIOR JURISDICTION—PURCHASER PENDENTE LITE.

A corporation organized by a defendant in a suit in a federal court, and to which he has, pending the suit, conveyed his water rights, which are the subject of the litigation, takes the same subject to any orders which might be made therein against its grantor, and may be enjoined by the court from instituting and prosecuting a suit in a state court for the determination of the same rights.

In Equity. On exceptions to answer, demurrers to bill and cross-bills, and motion for injunction pendente lite.

W. C. Van Fleet and W. B. Treadwell (Isaac Frohman, of counsel), for complainant Miller & Lux.

A. M. Kidd, for complainants and defendants Henry Wood et al.

James F. Peck and Charles C. Boynton, for defendants Thomas B. Rickey and the Rickey Land & Cattle Company.

Cheney & Massey, for defendants the Mickey Ditch Company et al.

Mack & Farrington and George S. Green, for complainants and defendants J. E. Gignoux et al., Patrick Gallagher, L. R. Ames et al., James Nichol et al., Patrick J. Conway et al., and Mary T. Shaw et al.

John Lothrop, for defendants William R. Penrose et al.

HAWLEY, District Judge. In the multitude of questions involved in these cases it will be the endeavor of the court to group them together, as far as possible, under one general head. There are, however, certain motions and demurrers relating exclusively to the case of Miller & Lux v. Rickey et al. (C. C.) No. 731, 123 Fed. 604, 127 Fed. 573, which will first be disposed of. The general nature and character of this suit may be briefly stated as one in tort to obtain an injunction restraining the defendants from diverting the waters of Walker river above complainant's lands to its prejudice. No damages are asked for. Complainant interposed an exception to paragraphs 28 and 29 of defendant Rickey's answer to the bill of complaint for impertinence. This answer, after containing denials and admissions, sets up new matter, to the effect that certain rights to the water, which are alleged to be prior in point of time to those claimed by complainant, and, in paragraph 28, for further answer alleges, in substance, that below the place where he is diverting the water, and above the place where complainant is diverting the water, a large number of persons named in the answer, some of whom are defendants in this suit, are diverting a quantity of water from the Walker river greater than the quantity which complainant claims, and that their diversions and appropriations of the water are subsequent in point of time to those of the defendant Rickey, and also subsequent in point of time to those of the complainant. This allegation is not responsive to any of the allegations

contained in complainant's bill, and does not, of itself, constitute a defense to this suit. The question involved, so far as the defendant Rickey is concerned, is not whether other parties are diverting the water, but whether he has the right to divert it. If he establishes the fact that his own diversion of the water which he claims is prior in point of time to the appropriation and diversion of the water by the complainant, he has a complete defense to the suit, and if he does not establish that fact he should be enjoined in this suit from diverting the water to the prejudice of complainant. If defendant's diversion of the water was wrongful, he could have no defense as against the injunction on the ground that other persons were guilty of the same wrongful act. Such proof would be irrelevant and inadmissible. Evidence to prove such facts is only admissible on the question of damages. Here no damages are claimed. Gould v. Stafford, 77 Cal. 66, 18 Pac. 879.

The matters set up in paragraph 29 of the answer were previously set up by plea and overruled. I think the rule is well settled that such matters cannot be again set up in the answer.

In Pentlarge v. Pentlarge (C. C.) 22 Fed. 412, it was held that neither equity rule 39 nor the practice of equity courts outside of the equity rules would allow the defendants to set up in an answer matter which had on the plea been adjudged not to constitute a defense. The same principle is announced in Sharon v. Hill (C. C.) 26 Fed. 337, 341.

2. The next preliminary question to be disposed of is presented by demurrers to the cross-bills filed by three different corporations, the Mickey Ditch Company, the Fox Ditch Company, and the Greenwood Ditch Company, and a large number of individual defendants in No. 731, and the demurrers interposed to the cross-bills by divers and sundry others of the defendants. The different counsel representing the different defendants have not pursued the same course in filing their alleged cross-bills, but the controlling principles upon the points raised by the demurrers are substantially the same.

The complainant interposed a demurrer to all the cross-bills, substantially on the ground that no matter contained therein entitles the defendants to any relief in equity other than that to which they are entitled by their answers. In the group of defendants represented by the firm of Cheney & Massey they are all alike, and we select, for the purpose of illustration, that of the defendant the Mickey Ditch Company. It filed what is entitled "Answer and Cross-Complaint of Mickey Ditch Co.," and a separate paper entitled "Cross-Bill in Equity of the Mickey Ditch Co."

The first pleading proceeds in proper form as an answer to the bill of complaint, amounting to a complete defense, and then proceeds with what may be designated as proper matter for a cross-bill, which contains the same allegations as those in the answer, and further makes the following allegation, which distinguishes it from the answer:

"(11) That within three years last past said defendant Miller & Lux, a corporation, has wrongfully diverted the waters of the East Fork of said Walker River at divers places on said river, a large portion of which water

so diverted by them is never returned to the river; that they are now continuing the diversion aforesaid, and threaten to continue such wrongful diversion."

Then follows an averment that the diversions made by Miller & Lux are without right. In this connection it is proper to refer to the fact that the original complaint alleged:

"(21) That within three years last past the said defendants have, and each of them has, diverted the waters of the said Walker river at divers places on said river above the said lands of complainant, and above the points at which the said complainant so diverts said water, a large portion of which water so diverted by them is never returned to said river; and they are now continuing the diversions aforesaid, and have thereby deprived, and are now depriving, the complainant of a large portion of the said water to which the complainant is so entitled."

It thus appears that the complainant in the original bill is lower down the stream than the defendants, and that the defendants' diversions of the water are at places on the Walker river "above the said lands of complainant."

The general principle is well settled that a cross-bill for affirmative relief must contain within itself sufficient averments to entitle the cross-complainant to the relief asked for, or for some equitable relief. A cross-bill must not be founded solely on matters which can properly be availed of by way of answer. The effect of a cross-bill is to compel the original complainant to file an answer thereto, while the answer only calls for a replication.

The contention in support of the demurrer is that all the defenses that can be made are contained in the answer, and that the cross-bills state no cause of action against the complainant; that the defendants, being above the stream from complainant, cannot complain of a diversion of the water by the lower owner, because there is no wrong or injury done by him to the defendants. The only relief which the cross-bills ask for, in addition to the relief asked for in the answer, is as prayed for:

"That your honors adjudge and decree that the rights of your orator in and to the waters so diverted and appropriated by it, as herein alleged, may be adjudged and decreed by your honors prior and superior to any right or rights of said defendant Miller & Lux, and that the title of your orator in and to said waters may be forever quieted, and that said Miller & Lux be forever enjoined and restrained from diverting any water from said river in such manner and to such extent as to deprive your orator of any of the water aforesaid, and that your orator may have such further or other relief as the nature of the case may require and to your honors may seem meet."

If the defendants are able to show that their appropriations and diversions of the water are prior in time to the appropriations and diversions of the water by Miller & Lux, the decree of the court would be against the complainant in the suit, and such a decree would, in effect, quiet the title of the defendants, and give them all the relief to which they are entitled.

The matters contained in the cross-bill annexed to the answer are, it seems to me, purely defensive in their nature and character, and can be and are set up in the answer, and the complainant, Miller & Lux, ought not to be required to put in an answer to such cross-bills.

In American & G. M. & I. Co. v. Marquam (C. C.) 62 Fed. 960, it was held that a cross-bill seeking no discovery, and setting up no defense which might not as well have been taken by answer, will be dismissed. The court said:

"The cross-bills present mere matters of defense. Such is not their office. Such a bill, seeking no discovery, and setting up no defense which might not as well have been taken by answer, will be dismissed, with costs. 2 Daniell Ch. Pr. 1552, note."

See Dickerman v. Northern Trust Co., 80 Fed. 450, 458, 25 C. C. A. 549.

In Mills v. Fletcher, 100 Cal. 142, 148, 34 Pac. 637, the court said:

"The facts stated in the so-called 'cross-complaint' constitute a mere answer, and not a cross-complaint. So far as material they are, that defendants are the owners of, in the possession of, and entitled to the possession of, the demanded premises. The averment that plaintiffs claim an interest in the premises adversely to defendants is unnecessary, since that fact is even more explicitly averred in plaintiffs' complaint, and is put in issue by the general denial in the answer; and the averment that plaintiffs' claim is without right is also included in the general denial of all the allegations of the complaint. It is immaterial what the defendants called their pleading; its character is to be determined by the court."

In Story's Eq. Pl. (10th Ed.) § 629, the author, in summing up a discussion on this subject as applicable to the facts of this case, said:

"But wherever the cross-bill seeks relief, it is indispensable that it should be equitable relief otherwise it will be demurrable; for to this extent it is not, as we have seen, a pure cross-bill, but it is in the nature of an original bill, seeking the further aid of the court beyond the purposes of defense to the original bill; and under such circumstances the relief should be such as in point of jurisdiction the court is competent to administer."

With reference to the pleadings filed by Cheney & Massey, entitled "Cross-Bill in Equity," they include Miller & Lux with other defendants in No. 731, and also name other parties not included in the original bill. It contains similar averments to the other pleadings we have noticed, and, among other things, alleges:

"That within three years last past said defendants, excepting the defendant Miller & Lux, a corporation, have, and each of them has, wrongfully diverted the waters of the East Fork of said Walker River at divers places on said river above the lands hereinbefore described, and above the point at which your orator so diverts said water, a large portion of which water so diverted by them is never returned to the river; that they are now continuing the diversion aforesaid, and have thereby wrongfully deprived, and are now wrongfully depriving, your orator of a large portion of the water to which it is so entitled, under the diversion herein alleged, and threatening to continue such wrongful diversion."

There is no specific allegation against Miller & Lux, and no relief is prayed against this corporation. There is no reason why it should be required to answer cross-bills of this character. The principles heretofore announced which are applicable to this case need not be repeated.

The demurrers filed by Miller & Lux to the answers and cross-complaints and to the cross-bills in equity filed by Cheney & Massey are sustained.

The next group of cross-bills to be taken up will be those represented by Mack & Farrington and George S. Green, of which the pleadings filed by J. W. Wilson may be considered a fair type of the entire group. These cases differ from those we have previously mentioned in this, that they are indorsed "Answer of J. W. Wilson," and the demurrers thereto set up the additional ground that they are uncertain, in this, that it cannot be ascertained therefrom whether they are intended to be an answer, pure and simple, or are intended to be also cross-bills, which would require Miller & Lux to answer. This ground of demurrer is well taken. The answers set up the grounds of the defendant constituting a defense to the original bill, "further answering by way of new matter and cross-bill," set up matters purely defensive in their character, such as prescription and the statute of limitation, which could, of course, be included in the answer.

The true rule in cases of this kind is well expressed by the court in Shain v. Belvin, 79 Cal. 262, 21 Pac. 747. The court said:

"In the next place, if a defendant has any cause of cross-complaint, he should plead it as such. Matters which are proper as a defense will not be turned into a counterclaim or cross-complaint merely by a prayer for affirmative relief. * * * And if a party calls his pleading a counterclaim, he will not afterward be allowed to maintain that it was really a cross-complaint, and required an answer. * * * Upon the same principle, a party will not be allowed to gain any advantage by giving his pleading two inconsistent characters. If matter is pleaded as a defense, it is denied by force of the statute; if it constitutes a cross-complaint, and is pleaded as such, it requires an answer from the plaintiff. It is inconsistent to say that the same matter does and does not require to be answered. The pleader should take one ground or the other, so that his adversary may know how to proceed. If he, as here, 'for further and separate answer and defense to the complaint,' avers by way of cross-complaint,' etc., the rule that a pleading must be construed against the pleader applies, and as against him it may be treated merely as a defense. The words 'by way of cross-complaint' may be treated as surplusage."

It was probably unnecessary for complainant to demur to these so-called "cross-complaints." They are mere surplusage, and should be treated simply as answers. The demurrers are interposed to make it clear that the complainant is not required to answer, and counsel for the defendant expressed themselves as being "perfectly satisfied that the court shall say" the matters alleged for further answer by way of cross-complaint "is a part of the answer, and that the replication covers it."

These defendants also separately filed cross-complaints, which are subject to the rules announced in the former cases represented by other counsel, and the same ruling will be made. The demurrers interposed by complainant will be sustained.

The next group of defendants, wherein John Lothrop appears as counsel for Penrose and others, will now be considered. One pleading is indorsed "Answer and Cross-Bill of Defendant William R. Penrose," the other "Cross-Bill of Defendant William R. Penrose," the same as in the first class of cases hereinbefore described. They differ somewhat from the cases presented by Cheney & Massey. These defendants are co-owners or co-tenants with the complainant Miller & Lux in cer-

tain of the appropriations mentioned in the bill of complaint. After asserting their rights to the water of Walker river, and alleging that they have been in the exercise of such rights as co-tenants with the complainant for more than five years, defendants in the cross-bill allege:

"(10) That this defendant submits, for the reasons hereinbefore set forth, that the complainant is not entitled to any relief whatsoever against this defendant, and that this defendant should be adjudged and decreed and to be entitled to sufficient water of said Walker river as is or may be necessary to irrigate the aforesaid described lands, and for stock and domestic purposes, and to the exclusive use thereof, and for such other and further relief in the premises."

—And that Miller & Lux be required and commanded to appear herein and answer to the several allegations in this cross-bill contained.

As has already been said in the other cases, there is nothing contained in these cross-bills for affirmative relief except such relief as will naturally inure to the defendants' benefit if they establish the rights which they claim in their answers, and the complainant ought not, in any of such cases, be required to file an answer to the cross-bills. For the reasons heretofore given, the demurrers interposed to the pleadings herein referred to will be sustained.

Speaking generally of cross-bills, it may be said that the right of a defendant in a suit in equity to file a cross-bill against his codefendant, is admitted. The propriety of doing so in all cases may be seriously questioned, as it tends to prolong and complicate the trial, and often creates unnecessary expense, but the right exists, and in this regard I shall not interfere with the positions in which the respective parties have placed themselves. The responsibility they have assumed rests with them. The fact is that suits in equity are frequently complicated, and often involve many conflicting interests. In certain cases the subject-matter of the suits can be decided upon the issues made by the complaint and answer, but it sometimes happens that a suit cannot be completely disposed of without deciding upon the claims of defendant either against the complainant or against codefendants, or against property which is the subject of litigation, and, as a general rule, the regular way of bringing such claims before the court is by cross-bill.

A defendant may always avail himself of every possible defense that he can have to a suit by means of an answer alone, but there are cases in equity where the most effective way of making a complete defense is by attacking the assailant, whether complainant or a codefendant; and when a defendant in equity wishes to adopt that mode of defense an answer will not serve his purpose, he must resort to a cross-bill. "An answer is a shield, not a weapon." The distinction between these lines of a defense and an attack belong to all systems of judicial procedure alike, but in the mode of dealing with this distinction there are wide differences. The same facts which will constitute a means of attack only in one system may be a defense proper in another system; but, as said in Langdell on Eq. Pl. § 50, "this is not a difference in procedure, it is a difference in the law of rights."

Next in order come the cases relating to the proceedings against the "Rickey Land & Cattle Company," a corporation, which are contained

in all the suits. There are some questions that are common to all, and others apply only to certain of the suits. They may with propriety be classed under four separate heads, viz.: (1) The suit of Wood et al., No. 790; (2) the suit of Miller & Lux, No. 791; (3) the five suits from No. 793 to No. 797, inclusive; (4) the proceedings instituted by a group of defendants in the original suit of Miller & Lux, No. 731. All the cross-bills were filed by leave of the court.

The objective point to be reached in all the proceedings is as to the right, power, and jurisdiction of this court to reach the Rickey Land & Cattle Company, a corporation which was not a party defendant in the original suit of Miller & Lux v. Rickey et al. (No. 731).

The nature and character of this suit has hereinbefore been tersely stated, and a further reference is here made to the statement in Miller & Lux v. Rickey et al. (C. C.) 127 Fed. 575. The defendant Rickey appeared therein, and entered a plea to the jurisdiction of the court, which was overruled, and afterwards he filed an answer to the suit. It is, in substance, alleged in all the cross-bills and complaints herein that after this court acquired jurisdiction of the suit No. 731 the defendant Thomas B. Rickey organized a corporation called the "Rickey Land & Cattle Company"; that he conveyed to that corporation the water rights and the lands to which they were appurtenant, the ownership to which he had set up as a defense in his answer to suit No. 731; that the corporation as formed by him is, in substance, Thomas B. Rickey under another name; that although under the form of a corporation, and although there were necessarily, under the law, other incorporators than Thomas B. Rickey, nevertheless he was the only person beneficially interested in that corporation, and that the other persons who united with him in forming that corporation were merely his nominees, holding stock in fact for his benefit. It is further alleged that this corporation, the Rickey Land & Cattle Company, thereafter commenced two certain suits in the superior court of Mono county, Cal. The complaint in that suit against Miller & Lux is set out fully in the bill brought by Miller & Lux against the Rickey Land & Cattle Company, and it appears from that bill that the issues tendered by the Rickey Land & Cattle Company in those suits were that it had a right, partly upon the law of riparian rights alleged to exist in California, and partly by appropriation, which is recognized by the law of Nevada, to certain waters of the Walker river, extending, in all, to about 2,000 cubic feet per second, and that the defendants in that suit, including Miller & Lux, complainant in suit No. 731, were claiming the right to divert the waters of that river adversely to the Rickey Land & Cattle Company, and alleged that the defendant Miller & Lux had no such right. If it had any right whatever, it was subsequent and subordinate to the right of the Rickey Land & Cattle Company to divert this 2,000 feet of water, and that the claim of Miller & Lux to do so was adverse to the Rickey Land & Cattle Company, and without right; and the prayer of the complaint in that case was that it should be adjudged and determined by that court that the Rickey Land & Cattle Company, plaintiff in this suit, had that prior right, that the defendants, including Miller & Lux, had no right to that quantity of water until that quantity of water

should be exceeded in the river, and that the title of the Rickey Land & Cattle Company to the amount of the waters of that river should be quieted as against Miller & Lux and the other defendants. And it is alleged that the issues in those two cases are the same as the issues in Miller & Lux v. Thomas B. Rickey et al. (No. 731), and that those suits were intended and have the necessary effect of bringing to trial before the said court the issues of which this court had already obtained jurisdiction in the suit of Miller & Lux v. Thomas B. Rickey et al., thereby hindering and embarrassing this court in its determination of the suit of Miller & Lux v. Thomas B. Rickey, and to the necessary prejudice of the complainant in that suit  The nature of the injunction which is sought in these suits is an injunction to restrain the defendant from prosecuting, as against the complainant, Miller & Lux, and a number of other persons, the suits brought by the Rickey Land & Cattle Company in Mono county, and the ground on which an injunction against the further prosecution of those suits is sought is that the issues in those cases are the same as those in the suit of Miller & Lux v. Thomas B. Rickey et al., pending in this court, and that this court first obtained jurisdiction of that controversy, and therefore had a right to retain it to the end, to the exclusion of any interference by any other court. The injunction sought for is against the party, not against the court in Mono county, and on the ground that this court should complete the controversy, and should not be interfered with. A preliminary restraining order was issued by this court, and an order upon the Rickey Land & Cattle Company to show cause, if any it could, why this order or an injunction pendente lite should not be issued in the several cases. They were all set for hearing at the same time, and were all argued together. The defendant, to show cause why the relief should not be granted, interposed separate demurrers to the several pleadings in the several suits and proceedings herein, and also filed several affidavits as to the facts of the incorporation of the Rickey Land & Cattle Company, covering the whole field of its objection to the proceedings herein instituted by the several parties. The affidavits are quite lengthy. It is not deemed necessary to quote them in hæc verba, but a reference thereto will be made in order to illustrate the points upon which the corporation relies for a full and complete defense to all the suits and proceedings instituted by the respective complainants.

The demurrers in all the cases are based upon the proposition that the bills of complaint or cross-bills show that the complainants are not entitled to the relief prayed for against the defendant; that the bills are without equity; and that the said bills are uncertain in this: that it cannot be ascertained therefrom what issues are tendered, showing, or tending to show, that the suits brought by defendant in Mono county, Cal., present the same issues which were tendered in the bill of complaint of Miller & Lux v. Rickey et al. in this court. In addition to these propositions, in some of the other classes of cases the demurrer to the cross-bill is based upon the ground that it does not appear that this court has any jurisdiction over the subject-matter of the controversy in said cross-bill; that the facts set forth in said cross-bill are

independent of, distinct and different from, any controversy set out in the original bill, and is an attempt to interpose a new controversy between cross-complainant and this defendant, both of whom are co-defendants in the original bill; that said cross-bill is multifarious, in that it is brought in regard to matters having no connection with the subject-matter of the original bill, and not proper to be investigated in this suit; that several defendants in the original suit are not made parties to this cross-bill; that there is a misjoinder of parties plaintiff, in that several parties have been joined as parties plaintiff who have no common interest or community of interest or joint interest in the water, the subject-matter of the cross-complaints, and that the interest of each plaintiff therein is several.

Under the facts of this case the question arises whether or not this court has the power and authority to issue the injunction against the Rickey Land & Cattle Company that is prayed for; in other words, has this court any jurisdiction in the premises?

The main discussion of this question will be first confined to the suit of Miller & Lux against that corporation (No. 791), as it is free from certain objections raised in the other cases. This suit was brought by Miller & Lux for an injunction prior to the date of service of summons in the Mono county cases instituted by the defendant.

In Rodgers v. Pitt (C. C.) 96 Fed. 668, 670, this court said:

"The general rule is well settled that where different courts have concurrent jurisdiction the court which first acquires jurisdiction of the parties, the subject-matter, the specific thing, or the property in controversy is entitled to retain the jurisdiction to the end of the litigation, without interference by any other court. * * * If this court first obtained jurisdiction of this cause, it has the power and it is its duty to restrain the defendants herein from taking any proceedings in the state court which would have the effect of defeating or impairing the jurisdiction of this court."

These general principles are not denied, but their application to the facts of this case is seriously questioned. In the bill of complaint in No. 791 the pleader sets forth the proceedings had in No. 731, and then sets forth in full the proceedings in the two actions brought by defendant in Mono county, Cal., and alleges:

"(22) That the issues tendered by said complaints in said two actions so brought by the defendant herein as plaintiff against your orator and said other persons are, so far as concerns your orator, the same issues which were tendered by the said bill of complaint of your orator so filed in this court, so far as the same related to the defendant Thomas B. Rickey in said suit. (23) That at the time of the filing by the defendant herein of its complaints aforesaid, the said defendant did not have or claim to have, and does not now have or claim to have, any right whatever in or to any of the waters of said Walker river, or of any branch or tributary thereof, except such rights, if any, as it acquired by said conveyance to it from the said Thomas B. Rickey. (24) That the defendant herein, in and by the actions aforesaid, intended, and the necessary effect of said actions is, to bring on for trial and determination in said superior court the same issues presented by the said bill of complaint of your orator in the said suit so brought by it in this court, so far as relates to the issues between your orator and the said Thomas B. Rickey, and to obtain from said superior court a judgment determining said issues in advance of a determination of the same by this court, and thereby to defeat the jurisdiction of this court in the said suit so now pending before it, and to hinder and embarrass this court in the trial

of said issues, and in the enforcement of any decree which this court may render in the said suit so pending before it; and further prosecution of said actions, or either of them, as against your orator, would therefore be in derogation of the jurisdiction of this court and of the rights of your orator in the suit so brought by it in this court and now pending therein."

All the cross-bills, so far as the Rickey Land & Cattle Company is concerned, relate to the same subject-matter which was brought before this court by the complaint of Miller & Lux in the original suit, and to the right of the defendant Rickey to take any water away from the river, as against its respective rights. The relief asked for is in relation to the same matter which was brought before the court in the original suit.

In view of what has already been said, it is unnecessary to take up seriatum the other cross-bills filed against the Rickey Land & Cattle Company. The truth is that the principles already announced show that, although there may be a difference in some of the facts, there is none in the application of the principles of law to all the cross-bills. They stand virtually upon the same plane, and are governed by the same rules.

The suggestion is made that this court has no jurisdiction of certain cross-bills because the parties thereto are citizens of the same state. This is without merit. The cross-bills are all ancillary to the original suit of Miller & Lux v. Rickey et al. (No. 731). The principle is well settled that a cross-bill of this character is not an original suit, but is ancillary and dependent, supplementary, merely, to the original suit out of which it arises, and is maintained without reference to the citizenship or residence of the parties. It does not depend upon the citizenship of the parties, but on the subject-matter of the litigation. Krippendorf v. Hyde, 110 U. S. 276, 281, 4 Sup. Ct. 27, 28 L. Ed. 145; Morgan's Co. v. Texas Central Ry., 137 U. S. 171, 201, 11 Sup. Ct. 61, 34 L. Ed. 625; In re Tyler, 149 U. S. 164, 181, 13 Sup. Ct. 785, 37 L. Ed. 689; Root v. Woolworth, 150 U. S. 401, 413, 14 Sup. Ct. 136, 37 L. Ed. 1123; Broadis v. Broadis (C. C.) 86 Fed. 951, 954; Home Ins. Co. v. Virginia C. C. Co. (C. C.) 109 Fed. 681, 687.

The fact that some of the cross-bills were not filed until after the service of process was made upon the parties in the Mono county suits is wholly immaterial. The jurisdiction of this court does not in any manner depend upon the question as to the service of process in the Mono county suits. The only jurisdiction which this court is called upon to assert was obtained in the proceedings had in the suit of Miller & Lux v. Rickey et al. (No. 731), which was long prior to the commencement of the Mono county suits, as will hereafter more fully appear.

The affidavits filed by defendant, which upon the hearing hereof take the place of an answer, do not deny the issues made in the original suit (No. 731), nor do they deny that this court acquired jurisdiction of the person of the defendant Rickey years before the commencement of the actions in Mono county. They do not deny that said Rickey, pending the original suit, conveyed to the Rickey Land & Cattle Company the water rights which he was claiming, and by virtue of which he was defending the original suit, but they do deny

that said corporation is simply a change of name. The affidavit of Thomas B. Rickey states that Charles Rickey is, and at all times since the organization of this corporation has been, the owner of 100 shares, and that "Alice B. Rickey is now, and ever since the organization of said corporation has been, the owner of and entitled to all the rights, privileges, and profits growing out of one hundred shares of the capital stock of said Rickey Land & Cattle Company; that each of said persons, Charles Rickey and Alice B. Rickey, became owners of said stock by subscription to the capital stock of said corporation." This affidavit does not state that they, or either of them, ever paid any value therefor.

By the institution of the original suit and the process of this court therein, this court acquired jurisdiction to hear and determine what rights the defendant Rickey had in the premises. These propositions are not denied in the affidavits filed on behalf of the Rickey Land & Cattle Company. So far as these affidavits are concerned, it stands admitted, because it is not denied that Rickey, pending the suit brought by Miller & Lux, and after his personal appearance therein, conveyed to the corporation known as the Rickey Land & Cattle Company the water rights which he was claiming to own, and by virtue of which he was defending the suit in question. The affidavits show that he is the largest, if not the sole, owner of the entire stock of this corporation. I shall not discuss this part of the transaction. The affidavits speak for themselves, and show what the transactions were. From the view I take of the legal controlling question herein, it matters not whether, in law or fact, Mr. Rickey himself was the sole owner of the entire stock of this corporation, and whether or not his wife and son were holding the small number of shares in their names for his individual benefit or their own.

Is it not true that the corporation, whoever its stockholders may be, has the same rights that Thomas B. Rickey had, no more, and no less? It is not the name of the parties, but their situation and relation to the subject-matter of the original suit, which will fix their status in the present proceedings. It is not claimed that Thomas B. Rickey before he transferred his private property to the corporation could not have been enjoined from bringing the suits in Mono county to quiet his title to the flowing waters of the Walker river, which is the subject-matter of this litigation. But it may be said that he could not have brought such a suit because he was a party to the original suit of Miller & Lux v. Rickey, and that this court had acquired jurisdiction over his person and the subject-matter of that suit. It is true that the corporation is not a party to the original suit. It is not necessary that it should be made a party in order to authorize this court to grant the relief asked for.

In Mellen v. Moline Iron Works, 131 U. S. 352, 371, 9 Sup. Ct. 781, 33 L. Ed. 178, the court said:

"Purchasers of property involved in a pending suit may be admitted as parties, in the discretion of the court; but they cannot demand, as of absolute right, to be made parties, nor can they complain if they are compelled to abide by whatever decree the court may render, within the limits of its power, in respect to the interest their vendor had in the property purchased

by them pendente lite. Eyster v. Gaff, 91 U. S. 521, 524, 23 L. Ed. 403; Union Trust Co. v. Inland Navigation & Improvement Co., 130 U. S. 565, 9 Sup. Ct. 606, 32 L. Ed. 1043; 1 Story's Eq. Jur. § 406; Murray v. Ballou, 1 Johns. Ch. (N. Y.) 566. As said by Sir William Grant in Bishop of Winchester v. Paine, 11 Ves. 194, 197: 'The litigating parties are exempted from the necessity of taking any notice of a title so acquired. As to them, it is as if no such title existed; otherwise, such suits would be indeterminable, or, which would be the same, in effect, it would be in the pleasure of one party at what period the suit should be determined.' The present proceeding is an attempt upon the part of a purchaser pendente lite to relitigate, in an original, independent suit, the matters determined in the suit to which his vendor was a party. That cannot be permitted, consistently with the settled rules of equity practice."

In 2 Black on Judgments, § 550, relating to purchasers pendente lite, the author said:

"It is a general rule that a purchaser of property, * * * who buys pending a litigation concerning it, comes into privity with his vendor, so as to be bound by the judgment in that suit the same as if made a party of record. [Citing many authorities.] 'We apprehend it is well settled that he who purchases property pending a suit in which the title to it is involved takes it subject to the judgment or decree that may be passed in such suit against the person from whom he purchases. That he purchased bona fide, and paid a full consideration for it, will not avail against such judgment or decree. Nor will he be permitted to prove that he had no notice of the suit. The law infers that all persons have notice of the proceedings of courts of record. The law is that he who intermeddles with property in litigation does it at his peril, and is as conclusively bound by the results of the litigation, whatever they may be, as if he had been a party to it from the outset'—citing Tilton v. Cofield, 93 U. S. 163, 23 L. Ed. 858; 1 Story, Eq. Jur. § 406, and other authorities. * * * In a late case it is said that the purpose of the rule is to keep the subject-matter of the litigation within the power of the court until judgment or decree shall be entered, since, otherwise, by successive alienations pending the suit, the judgment or decree could be rendered abortive and impossible of execution. It is also said that two things seem to be indispensable to give effect to the doctrine of lis pendens: (1) That the litigation must be about some specific thing which must necessarily be affected by the termination of the suit; and (2) that the particular property involved in the suit may be so definite in the description that any one reading it can learn thereby what property is intended to be made the subject of litigation."

And observes:

"That the only office of a notice of lis pendens is to give constructive notice to, and to bind by the subsequent proceedings, those who may deal with the defendant in respect to the property involved in the action during its pendency and before final judgment; and no notice is necessary to make the judgment effectual as against parties claiming under the defendant by transfer subsequent to the judgment. The judgment disposes of the rights of the parties, is a matter of public record, and is conclusive both upon the defendant and any subsequent grantee. It is also conclusive, without such notice, upon a purchaser who has actual knowledge of the pendency of the suit."

In 1 Bates Fed. Eq. Pro. § 541, the author, in discussing the question of injunctions issued to stay proceedings in state courts, and after quoting the provisions of section 720, Rev. St. [U. S. Comp. St. 1901, p. 581], said:

"It is well settled, upon both reason and authority, that the prohibition contained in this statute 'does not apply where the federal court has first obtained jurisdiction, or where, the state court having first obtained juris-

diction, the case has been removed to the federal court. In such cases the federal court may restrain all proceedings in a state court which would have the effect of defeating or impairing its jurisdiction. It extends only to cases in which the jurisdiction has first attached.' If the rule were otherwise, 'after suit brought in a federal court, a party defendant could, by resorting to a suit in a state court, defeat, in many ways, the effective jurisdiction and action of the federal court, after it had obtained full jurisdiction of person and subject-matter' "—citing Sharon v. Terry (C. C.) 36 Fed. 365, and numerous other authorities.

And in the course of the discussion quotes from Peck v. Jenness, 7 How. 612, 624, 12 L. Ed. 841:

"It is a doctrine of law too long established to require a citation of authorities that where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court and the right of a plaintiff to prosecute his suit in it have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but in necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin or any other process, for this would produce a conflict extremely embarrassing to the administration of justice."

In Starr v. Chicago Ry. Co. (C. C.) 110 Fed. 3, 6, the court said:

"(1) The federal courts must determine for themselves the limits of their jurisdiction, and the Supreme Court of the United States is the final arbiter in all questions of this nature. A renunciation of this power or a failure to discharge his duty would be fatal to our system of government. It would withdraw the keystone of the arch. * * * (2) Wherever a federal court and a state court have concurrent jurisdiction, the tribunal whose jurisdiction first attaches holds it to the exclusion of the other until its duty is fully performed and the jurisdiction involved is exhausted. * * * (3) The foregoing principle is so indispensable to the harmonious working of our systems of federal and state jurisprudence that neither the eleventh amendment to the Constitution, nor section 720 of the Revised Statutes, which prohibits the issue by a court of the United States of a writ of injunction to stay proceedings in any court of a state, can be permitted to interfere with its maintenance. The court which first obtains jurisdiction of the subject-matter and of the necessary parties to a suit may—and, if it discharges its duty, it must—if necessary, issue its injunction to prevent any interference by any one with its effectual determination of the issues, and its administration of the rights and remedies involved in the litigation."

—And in support of these principles cites a vast number of authorities.

These general principles are too well settled to require further discussion. They have repeatedly been declared in suits and actions of various kinds by the highest court in the land, and announced in nearly, if not all, the federal courts, circuit and district, and in the various courts of appeal, wherever the question has been presented.

The object and purpose of the Rickey Land & Cattle Company in the commencement of the suits in question in Mono county, Cal., is to take to another court the questions which have long been, and still are, properly in litigation in this court, and this is sought to be done in order to forestall and nullify, if possible, any decision or decree

which this court may render regarding issues of which it first obtained full and complete jurisdiction. The impropriety and inadmissibility of such proceedings in the light of the established fundamental rules of our judicial systems is manifest. The suits in this court will quiet and settle the title or rights of the respective parties to the flowing waters of Walker river. The enforcement of the rule that the court which first takes jurisdiction of the parties and subject-matter of a suit must retain and exercise it to the exclusion of any and all proceedings in other courts until its jurisdiction is exhausted by the final judgment or decree is absolutely essential to the due and proper administration of justice. This duty it owes to itself, as well as to the litigants, in seeing that its own jurisdiction is not impaired. The litigants have the right to have the case tried in the court where jurisdiction was first obtained, and should not be harassed or annoyed, or compelled to go to another court, and there try the identical questions which will properly arise in the court where the suit was originally commenced and is still pending. Such a rule, properly applied, should be rigidly enforced, not only to prevent unseemly conflicts in the courts, but to protect the litigants who are properly before this court.

The several demurrers interposed by the Rickey Land & Cattle Company to the bills in equity and cross-bills are overruled.

The injunction pendente lite, as prayed for against the Rickey Land & Cattle Company, is granted.