PATTON et al. v. MARSHALL.

(Circuit Court of Appeals, Fourth Circuit. July 13, 1909.)

No. 871.

1. EQUITY (§ 204*)—CROSS-BILL—BRINGING IN NEW PARTIES.

New parties cannot be brought into a suit in equity by a cross-bill; but, if the interest of defendant requires their presence, he should take the objection of nonjoinder and compel complainant to amend.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 467; Dec. Dig. § 204.*]

2. EQUITY (§ 204*)—CROSS-BILL—RIGHT TO FILE.

In a suit in equity by the purchaser of coal rights in lands for a specific enforcement of the contract, the terms of which were in dispute between the parties, the defendant cannot by cross-bill bring in as parties defendant the agents who made the contract, on his behalf and with his approval, to have their right to commissions determined, a controversy which has no relevancy to the principal suit, and in which complainant has no interest.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 204.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. Courts (§ 307*)—Federal Courts—Jurisdiction of Cross-Bill.

If a cross-bill 'in a federal court assumes the character of an original bill, it will be dismissed for want of jurisdiction, where the parties to the controversy presented thereby are citizens of the same state.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 307.*]

4. Courts (§ 508*) — Federal Courts — Injunction Against Proceedings in State Court.

Under Rev. St. § 720 (U. S. Comp. St. 1901, p. 581), which provides that a writ of injunction shall not be granted by a federal court to stay proceedings in any court of a state, a federal court has no power to enjoin the further prosecution of an action at law in a state court between citizens of the same state to permit one of the parties to litigate the same question before it by making the other party a defendant in a suit in equity pending therein.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 508.*

Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

Suit in equity by Elwood D. Fulton against T. Marcellus Marshall and others. To a cross-bill filed by Marshall, making them parties, John Patton and Thomas L. Evans demurred. From an order overruling the demurrer and granting an injunction staying an action in a state court, they appeal. Reversed.

On the 2d of October, 1901, T. Marcellus Marshall, residing in the state of West Virginia, entered into a contract with John Patton and T. L. Evans as follows:

"I hereby authorize John Patton and T. L. Evans, of Harrison county, W. Va., to act as my agents in selling something like two or two and one-half thousand acres of land containing coal of the Pittsburg vein of coal that I own or control. I agree to make deeds of general warranty of perfect title for all lands as soon as the money shall be paid to me or deposited to my order in some bank specified by me to be held by it in escrow during the reasonable and necessary time for me to execute said deeds and for the grantees to examine them and the claim of title back of them. I retain all rights and discretion in the matter, and said Evans and Patton are merely employed by me to carry out my directions in the matter.

"Glenville, W. Va., Oct. 2, 1901.　　　　　　T. Marcellus Marshall.

"I accept the above agency.

　　　　　"John Patton & T. L. Evans."

The said Marshall at the time was the owner, in his own right, of a considerable quantity of coal lands, and also had control of other lands as administrator with the will annexed of Robert R. Marshall, deceased. Acting upon the authority conferred as above, Patton & Evans entered into a contract with E. D. Fulton on the 25th of October, 1901, from which, in order to show the character of the sale, the following paragraph therein is here copied:

"That the parties of the first part do hereby sell to the party of the second part all of the coal known as the Pittsburg vein upon and underlying the farm or tracts of land owned by T. M. Marshall, and also all of the coal of the vein aforesaid controlled by said T. M. Marshall, as executor of the last will of R. R. Marshall, deceased, situate in the counties of Gilmer and Braxton, in the state of West Virginia, on the waters of the Little Kanawha river, Sliding run, Long run, Joe's run, Heater's fork, Dusk Camp, Copen's run, and other tributaries of the said river, containing from two thousand to twenty-five hundred acres, more or less, of surface, at the price of thirty-five dollars per acre for coal; no allowance being made for outcrops, but saving and excepting there-

from all veins or strata of coal other than that usually called the Pittsburg vein. This sale is understood to include all the coal, subject to the exceptions hereinbefore stated which the executor (who is understood to be the said T. M. Marshall) is entitled to sell and convey under the provisions of the will of the said Robert R. Marshall, deceased, and also all of the coal owned by the said T. M. Marshall, in consideration whereof the party of the second part agrees and binds himself to pay the purchase money of thirty-five dollars per acre, as follows, to wit."

The terms of the sale were $2,000 in cash, which Fulton paid to Marshall, $5,000 additional within 30 days, which Fulton also paid, and a sum sufficient to make up one-third of the whole purchase price within 90 days from the date of the sale. Marshall agreed to pay Patton & Evans $2.50 per acre for the services they were to render in making the sale of the lands above described. Marshall at first demurred to the contract which his agents, Patton & Evans, had made with Fulton, but afterwards ratified it and accepted the cash payments, and Fulton then made a deposit in bank of the sum of $16,500 to Marshall's credit, which was intended to cover the one-third payment required by the contract. Afterwards, as appears from the record, a disagreement arose between Marshall and Fulton as to the construction of the contract, Marshall insisting that he was to have pay for the land contracted to be sold according to the actual surface area of each of the tracts, to be computed from the horizontal measurement of the exterior boundaries, without reference to the actual coal area of the said tracts, and that, whilst Fulton had bought upon these terms, the contract was only to convey to him the actual Pittsburg vein or stratum of coal underlying the said tracts. On the other hand, Fulton contended that he was not to pay per acre for surface measurement, but only for the quantity actually underlaid by the kind of coal prescribed in the contract. Marshall refused to execute deed to Fulton upon the terms claimed by the latter, and thereupon Fulton filed his bill on the equity side of the docket in the Circuit Court of the United States for the Northern District of West Virginia to compel specific performance of the contract of sale made with him by Marshall, through his agents, Patton & Evans, on the 25th day of October, 1901.

Fulton's bill was filed on the 4th of September, 1903, and he named as defendant in his suit T. Marcellus Marshall, in is own right and as administrator with will annexed of Robert R. Marshall, deceased. By leave of the court Fulton filed in his cause on November 3, 1903, an amended bill, in which Robert M. Marshall, John S. Withers, and Robert G. Linn are named as defendants in addition to those in the original bill. In the amended bill Fulton seeks the same relief as in the original; the object of the amendment being, as appears from the record, to bring in as additional parties defendant Robert M. Marshall, John S. Withers, and Robert G. Linn. Robert M. Marshall was claiming an interest as one of the devisees under the will of Robert R. Marshall in the coal lands contracted to be sold to Fulton, and John S. Withers also claimed an interest in the said lands by reason of a conveyance from Charles E. Marshall, who was a devisee also under the said will. Robert G. Linn, the other defendant brought in, was, so it was alleged, the owner of one of the tracts of land sold to Fulton. Robert M. Marshall and John S. Withers were undertaking to assert whatever right they may have had in these coal lands by a bill of complaint which they had filed on the 13th of November, 1903, in the circuit court of Gilmer county, W. Va., after Fulton had filed his bill in the Circuit Court of the United States, as before stated. They named as defendants in their bill in the circuit court of Gilmer county T. Marcellus Marshall, in his own right and as administrator of Robert R. Marshall, deceased, Elwood D. Fulton, and Robert G. Linn.

The bill filed by Robert M. Marshall and John S. Withers in the state court sought to compel Fulton and T. Marcellus Marshall to carry out the contract which had been made through Patton and Evans for the sale of the Pittsburg vein of coal upon and underlying the tracts of land which T. Marcellus Marshall owned and controlled, as heretofore stated. The complainants in that bill claimed that they were entitled to a part of the proceeds of this sale, because of an alleged interest in some of the lands embraced in the contract. The disclosure of these facts, it is assumed, led to the filing of Fulton's

amended bill in the Circuit Court of the United States to bring in Robert M. Marshall, John S. Withers, and Robert G. Linn as parties defendant. On the same day that Fulton's bill was filed in the Circuit Court, to wit, the 4th day of September, 1903, John Patton and Thomas L. Evans, T. Marcellus Marshall's agents, who made the contract of sale with Fulton, brought a suit at law in the circuit court of Gilmer county, W. Va., against T. Marcellus Marshall, to recover of him their compensation for services rendered in effecting the sale to Fulton under the contract of October 2, 1901. Their declaration was in assumpsit, and they demanded a commission of $2.50 per acre for the number of acres which Marshall authorized them to sell. To this declaration Marshall demurred; but, his demurrer having been overruled, he entered his plea of non assumpsit on January 11, 1904, and the issue was joined. Upon the petition of T. Marcellus Marshall, the defendant, the circuit court of Gilmer county stayed proceedings in the suit of Patton and Evans from time to time and until March term, 1907, of said court. At this term of the said court, at the instance of Marshall, the court again stayed proceedings in the suit until the next regular term of the court. Before the day arrived to which the last stay had been given, T. Marcellus Marshall on June 27, 1907, filed his cross-bill in the Fulton suit in the Circuit Court of the United States. The prayer of this cross-bill was, among other things, that John Patton and Thomas L. Evans be made parties defendant, and that their rights be litigated and determined in the Fulton suit, and that they be enjoined and restrained from proceeding further in the action which they had brought in the state court. The Circuit Court, in response to this prayer, directed a subpœna to be issued commanding the said Patton and Evans to appear, and also granted a restraining order enjoining them from proceeding with their case against T. Marcellus Marshall in the state court. Patton and Evans demurred to the cross-bill and moved to dissolve the injunction. The demurrer was overruled, and a decree entered continuing the injunction. From this decree Patton and Evans appealed to this court.

The assignments of error on this appeal present for consideration two propositions: First, that the defendant, T. Marcellus Marshall, could not by his cross-bill make Patton and Evans parties defendant to the Fulton suit in the Circuit Court of the United States; Second, that the Circuit Court was, by reason of section 720, Revised Statutes of the United States (U. S. Comp. St. 1901, p. 581), without jurisdiction to enjoin the action at law which Patton and Evans had brought and which was pending in a court of the state of West Virginia.

John W. Davis (R. F. Kidd and Davis & Davis, on the briefs), for appellants.

W. E. R. Byrne (Linn & Byrne, on the briefs), for appellee.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge (after stating the facts as above). It is the privilege of a complainant in a bill in equity to make such parties defendant in his suit as he may elect, provided such parties come within the class of necessary parties, or proper parties, or both; but even the complainant has no right to go beyond these classes, and bring into his suit those who have no connection with the controversy disclosed in the bill, nor interest or concern in its determination. It seems that the complainant in the equity cause of Fulton against Marshall, pending in the Circuit Court of the United States, had brought before the court all the parties, so far as interests are disclosed by the record, necessary to a complete determination and adjudication of the subject-matter of his bill. In the outset he made party defendant T. Marcellus Marshall, in his own right and as administrator, with whom

the contract of sale had been made, and as against these parties the complainant sought specific performance. It was afterwards ascertained that Robert M. Marshall and John S. Withers claimed an interest in the proceeds of the sale, and it was further ascertained that the legal title to one of the tracts of land included was in Robert G. Linn. It cannot be denied that if the Marshall last named and Withers and Linn held title to portions of the land included in the contract of sale, or were entitled to participate in the distribution of the proceeds, they were at least proper, if not necessary, parties. It was the orderly course, therefore, when Fulton discovered that these persons were claiming an interest in the lands wherein he had contracted to buy coal rights which might in some way affect the title to be derived from T. Marcellus Marshall, that he should proceed by an amended bill to make them parties defendant. When Fulton had brought before the court as defendants in his action all such parties as he knew or had ground to believe were interested in the subject-matter of his action, he had the right to proceed with his cause without interruption on the part of one of the defendants by an effort to introduce into the litigation an independent disconnected controversy between such defendant and outside parties.

If the complainant had omitted to bring in parties who were necessary to a complete determination of equities between himself and one or more of the defendants, or among defendants themselves, in regard to the subject-matter of the suit, a cross-bill was not the proper proceeding by which to supply such defect. A cross-bill in equity possesses no such function.

"The purpose of a cross-bill is either to obtain a discovery in aid of a defense to the original bill, or to obtain full relief to all the parties touching the matter of the original bill." Story's Equity Pleading, § 385.

"New parties cannot be introduced into a cause by a cross-bill. If the plaintiff desires to make new parties, he amends his bill and makes them. If the interest of the defendant requires their presence, he takes the objection of nonjoinder, and the complainant is forced to amend or his bill is dismissed." Shields et al. v. Barrow, 17 How. 130, 15 L. Ed. 158.

But, aside from this, Fulton's suit was for the specific performance of a contract of sale, a cause of action peculiarly cognizable in a court of equity. It was of no concern to him what Marshall had agreed to pay his agents whom he had authorized to secure a purchaser for the coal rights in the lands, nor could the compensation for services due or claimed by such agents enter into Fulton's cause of action. In equity pleading, the answer is a defense to complainant's bill, and does not set up grounds for affirmative relief. Such relief is granted upon a cross-bill. But affirmative relief in response to the prayer of a cross-bill is against either the plaintiff or a codefendant in the original bill. Street's Fed. Equity Prac. vol. 2, § 1020.

"The cross-bill must, so it is held, be germane to the original bill. It must be confined to the same matters as the original bill, and it cannot introduce a new controversy not embraced in the original bill." Street's Fed. Eq. Prac. vol. 2, § 1030.

This author lays down the further principle that a cross-bill is primarily a defense, and, being so considered, is confined to matters in

litigation in the original suit; otherwise, new matters might be introduced into a litigation by cross-suits without end; and still further says the same author, in section 1031:

"A cross-bill is bad that goes beyond the original bill, and states a cause of action foreign to the primary dispute. A cross-bill may allege new or additional facts not set forth in the original bill, and be germane to the subject-matter of the action. The introduction of new facts do not render a cross-bill objectionable, but the making of a foreign or multifarious issue."

Johnson Railroad Signal Co. v. Union Switch & Signal Co. (C. C.) 43 Fed. 331, holds as well settled the rule that a cross-bill cannot introduce any new or distinct matter not within the scope of the original bill, nor such matter as is not necessary as a defense to the original bill or is foreign to the primary controversy. A cross-bill which seeks no discovery and sets up no defense, except such as would be available by answer, is bad. Street, Fed. Eq. Prac. vol. 2, § 1022. See, also, Miller v. Rickey (C. C.) 146 Fed. 577.

In Railway Co. v. United States, 101 U. S. 639, 25 L. Ed. 1074, it is held that a cross-bill cannot be used to bring in new and distinct matters, and in support the court cites in that case Ayers v. Chicago, 101 U. S. 184, 25 L. Ed. 838. A cross-bill must grow out of the original suit. It cannot bring in new and distinct matters. Rubber v. Goodyear, 9 Wall. 788, 19 L. Ed. 566, and Cross v. Del Valle, 1 Wall. 5, 17 L. Ed. 515. In this last case it is said by the court:

"That a cross-bill is a mere auxiliary suit, and a dependency of the original. It may be brought by a defendant against the plaintiff in the said suit, or against other defendants, or against both; but it must be touching the matters in question in the bill."

A cross-bill cannot introduce a new controversy, which it is not necessary to be decided in order to have a final decree on the case presented by the original bill. A cross-bill is "a proceeding to procure a complete determination of a matter already in dispute." 2 Dan. Ch. Pr. 1549, and note 2. The matter in dispute, as disclosed by Fulton's bill, was only specific performance of Marshall's contract. Suppose, for the sake of the argument, that Marshall had been the moving party, and had filed his bill against Fulton for specific performance of the contract of sale; no one would contend that Patton and Evans would have been either necessary or proper parties, for in the broadest view they had no interest which a decree against Fulton compelling him to carry out his contract could affect. Then how can they be necessary parties to a decree requiring Marshall to accept the balance of the purchase money and make title to Fulton in compliance with the terms of the contract which the latter's bill seeks to have specifically performed? We feel constrained in answer to this question to hold that Patton and Evans were not necessary or proper parties to Fulton's bill. They had no interest in the subject-matter of controversy between Fulton and Marshall, nor in any controversy which might arise between defendants themselves within the scope or the purposes of the original bill. Following, therefore, in the line which we have pursued in discussing this case, and relying upon the authorities and decisions which we have cited, it is our conclusion that Marshall could not

by his cross-bill make Patton and Evans parties defendant to Fulton's bill.

So far as appellant's first assignment of error is concerned, we might stop here; but there is another view presented by counsel which we must admit carries with it some force, and that is that Marshall's cross-bill, undertaking as it does to introduce into Fulton's suit new parties defendant against whom Marshall alone seeks relief, gives to his pleading the character of an original bill, and, this being so, that the essential element, to wit, diverse citizenship, as between Marshall and the new defendants, is wanting, and therefore the Circuit Court of the United States is without jurisdiction. As will be seen, Marshall and Patton and Evans are all citizens of West Virginia. If a cross-bill assumes the character of an original bill, it will be dismissed if wanting in the element of diverse citzenship which will be necessary to give jurisdiction to the Circuit Court of the United States. Cross v. Del Valle, supra. See, also, Delaware, L. & W. R. Company v. Jersey City (C. C.) 168 Fed. 128.

Appellants' second assignment of error is based upon the proposition that the Circuit Court was without jurisdiction to enjoin proceedings in the action at law which Patton and Evans had brought against T. Marcellus Marshall in the state court. It will be observed that, when Marshall filed his cross-bill in the Fulton suit, the action at law brought by Patton and Evans against him in the state court had been pending nearly three years. Marshall had entered his plea of nonassumpsit, and had thereby raised an issue which the plaintiffs were entitled to have tried by a jury. It is also a fact, as appears in the record, that in the Fulton suit in the Circuit Court, which had also been pending for the same length of time, Marshall had filed his answer, to which Fulton had on the 28th day of June, 1904, made replication. This case was, therefore, at issue, and a decree for the parties to take testimony had been entered. In this situation, Marshall, by his cross-bill, was permitted to bring in Patton and Evans as parties defendant to the Fulton bill in the Circuit Court, and by a decree of that court to enjoin them from proceeding with their action at law in the state court. The decree of the Circuit Court, therefore, had not only the effect to deprive Patton and Evans of their right to have the issue of fact raised by the pleadings in their suit against Marshall tried by jury, but at the same time the injunction issued by a court of the United States stayed a proceeding properly instituted and pending in a state court of West Virginia.

We do not deem it necessary to discuss the right of trial by jury, but will pass on to the second proposition; that is, that by the injunction issued in this case the suit of Patton and Evans against Marshall, pending in a state court, was stayed. There can be no doubt of the power of the courts of the United States in the exercise of their equity jurisdiction to issue the writ of injunction. This power is inherent in the courts themselves, and is also amply secured by statutes which authorize them to issue all writs necessary for the exercise of their respective jurisdictions. Upon this general power, however, there is one important limitation, and that is by virtue of section 720 of the Revised Statutes, which declares:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

The Supreme Court of the United States has passed upon this statute in a number of cases, notably in the case of Peck et al. v. Jenness et al., 48 U. S. 612, 12 L. Ed. 841. In that case the Supreme Court, speaking through Mr. Justice Grier, says:

"Act Cong. March 2, 1793, c. 66, § 5, declares that a writ of injunction shall not be granted 'to stay proceedings in any court of a state.' In the case of Diggs v. Wolcott, 4 Cranch, 179, 2 L. Ed. 587, the decree of the Circuit Court had enjoined the defendant from proceeding in a suit pending in a state court, and this court reversed the decree, because it had no jurisdiction to enjoin proceedings in a state court."

Following in line with this decision, the Supreme Court again, through Mr. Justice Bradley, in Haines et al. v. Carpenter et al., 91 U. S. 254, 23 L. Ed. 345, says:

"In the first place, the great object of the suit is to enjoin and stop litigation in the state courts, and to bring all the litigated questions before the Circuit Court. This is one of the things which the federal courts are expressly prohibited from doing. By the act of March 2, 1793, it was declared that a writ of injunction shall not be granted to stay proceedings in a state court. This prohibition is repeated in section 720 of the Revised Statutes, and extends to all cases except where otherwise provided by the bankrupt law. This objection alone is sufficient ground for sustaining the demurrer to the bill."

There are other decisions of the Supreme Court in point upon this question, but we will not pursue the discussion further than to say that there are, it is true, some cases constituting exception to the general doctrine announced in the authorities we have cited. See Deizsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497, in which Kern v. Huidekoper, 103 U. S. 485, 26 L. Ed. 354, is cited and approved, and French v. Hay, 22 Wall. 250, 22 L. Ed. 854, reaffirmed. Our case, however, is not within the exception, as a perusal of the opinions of the Supreme Court in the cases named will abundantly show.

It is our conclusion, therefore, that there was error in the decree of the Circuit Court, and that it should be reversed. The case is remanded, to the end that Marshall's cross-bill, so far as it concerns Patton and Evans, may be dismissed, and the injunction against them dissolved.

Reversed.